Argued October 2, reversed November 10, rehearing denied December 8, 1914.

# McCARTY v. HELBLING.

## (144 Pac. 499.)

**Vendor and Purchaser—Contract to Sell Land—Construction—Abstract of Title—Marketable Title.**

1. A homestead entryman's agreement to sell real estate and furnish an abstract of title thereto binds him to convey a good marketable title based on a previously issued patent.

[As to what is marketable title, see note in 132 Am. St. Rep. 991.]

**Vendor and Purchaser—Contract to Sell Land—Time of Performance—Waiver.**

2. Where, after expiration of the time limit specified in a contract for the sale of land for completing the transaction, the vendors continued negotiations and, by the deposit of deeds in escrow and other conduct, treated the contract as yet in existence and valid, they waived their right to insist that it had expired by limitation.

**Specific Performance—Contract to Sell Land—Subsequent Agreement—Sufficiency of Evidence.**

3. Evidence, in a suit to enforce specific performance of a contract to sell and convey realty, *held* sufficient, though conflicting, to show that the contracting parties agreed that the time fixed by the contract to close the transaction should be extended until a patent to the land was issued by the government and recorded and plaintiff given notice thereof.

[As to specific performance of options, see note in 118 Am. St. Rep. 592.]

**Public Lands—"Patent."**

4. A "patent" is an instrument by which the United States conveys, to persons entitled thereto, the legal fee-simple title to public lands.

**Specific Performance — Contract to Sell Land — Right of Action — Waiver—Public Lands.**

5. Where a contract for the sale of land within a stated time bound the vendor to furnish an "abstract of title" thereto, the purchaser's refusal to complete the transaction until a government patent to the land was issued and recorded did not preclude him from suing to specifically enforce the contract after notice to him of the recording of the patent, though at the time of his refusal the receiver's final certificate had been issued; a homestead entryman, who had received the receiver's final certificate, though having an equitable title which he may convey, not having a legal title, such as is implied by the term "abstract of title," until the patent has been issued and recorded.

Vendor and Purchaser — Purchase Money—Interest — Persons Liable —Extension of Option.

6. Where the vendors were unable to give good title at the time stipulated therefor and for payment of the balance of the purchase money, and the time was extended without any agreement by the purchaser to pay interest on the unpaid purchase money, the purchaser was not liable for such interest.

Specific Performance—Tender of Consideration—Necessity.

7. Where the purchaser arranged for payment of the purchase money with the bank with which the vendors had deposited deeds in escrow to be taken up in such time as the title to the land should be perfected by the issuance and recording of a government patent, and the bank was ready at all times after the recording of the patent to pay the money for the purchaser when the deeds should be ready for delivery, and it appeared that any actual tender would have been refused by the vendor, failure of the purchaser to make an actual tender did not preclude him from suing to enforce specific performance of the contract.

Specific Performance—Contract to Convey Land—Defense — Statute of Frauds.

8. That a parol agreement to extend the time of performance of a contract to convey land is void under the statute of frauds will not preclude the purchaser from enforcing specific performance, after expiration of the original time limit, of the contract to convey, where the vendor is not only at fault for the entire delay, but has waived the delay of performance by the purchaser.

From Multnomah: Robert G. Morrow, Judge.

This is a suit by James A. McCarty against Louis Helbling and Oscar Barnes to enforce the specific performance of a contract for sale of real property. From a decree in favor of defendants, plaintiff appeals. The facts are set forth in the opinion of the court.    Reversed and Remanded.

Rehearing Denied.

For appellant there was a brief over the name of *Messrs. Conley & De Neffe,* with an oral argument by *Mr. F. M. De Neffe.*

For respondents there was a brief over the names of *Mr. Thomas O'Day* and *Mr. J. M. Haddock,* with an oral argument by *Mr. O'Day.*

Department 1.   MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to obtain a decree for the specific performance of a written contract or "option" for the sale and conveyance of real property.   The defendant Helbling is the owner in fee of the southwest quarter of section 34 in township 20 south, range 4 west, of the Willamette meridian, containing 160 acres, and the defendant Barnes is the owner in fee of the east half of the northeast quarter of section 8 in township 21 south, range 4 west, of the Willamette meridian, containing 80 acres.

On November 8, 1909, a contract or "option" in writing was executed to J. S. Milne by the defendants through their agent, M. G. Griffin, of which the following is a copy:

"Option.
"For Agreement of Sale of Real Estate.
"November 8, 1909.

"I hereby agree to sell to J. S. Milne of Cottage Grove, Oregon, or assigns, at any time within thirty (30) days from date hereof, the following described real estate, situate in the county of Douglas and Lane, in the State of Oregon, to wit: The E. ½ of the N. E. ¼ of section 8, township 21 S., range 4 W., containing 80 acres, more or less.   And also the S. W. ¼ of section 34 in township 20 S., of range 4 W., containing 160 acres, more or less.   The total price, $7,540.00, payable as follows, to wit: $100.00, the receipt of which was acknowledged September 10, 1909; $400.00, the receipt of which was acknowledged September 27, 1909; $1,500.00, the receipt of which is hereby acknowledged, paid this date.   Which is credited to him should he complete the purchase on terms named, otherwise said sums to be retained as liquidated damages and commissions for our own use (M. G. Griffin, Louis Helbling and Oscar Barnes).

. "I agree to furnish abstract of title to these lands to J. S. Milne, his heirs and assigns. Time is of the essence of this agreement. (The above-mentioned payments to be forfeited, if terms are not complied with.)   Terms are thirty (30) days from date: $760.00 to Oscar Barnes and $1,270.00 to Louis Helbling; balance, note and mortgage to said Oscar Barnes and Louis Helbling, as their interest may appear (secured) ten per cent. interest, six months.

"M. G. Griffin,
"Duly Authorized Agent for Owners.

"I accept the foregoing agreement and will abide by its terms.                                     J. S. Milne.

"We accept the foregoing agreement and will abide by its terms.                                Louis Helbling.
"Oscar Barnes.

"Witnesses:
"I. J. Fisher.
"Jerome Brant."

M. G. Griffin was the agent of the defendants, and they approved the said contract as is shown *supra*. J. S. Milne was acting for other parties. The total price agreed to be paid for said two tracts of land was $7,540.   Milne had paid thereon, in two partial payments, the sum of $500, and he paid at the time of the execution of said contract $1,500 additional, making a total of $2,000 that Milne paid thereon, leaving unpaid on the purchase price of said property the sum of $5,540.

Said contract states that "time is the essence" thereof, and that said amounts so paid were to be forfeited if the terms of said agreement should not be performed.   By the terms of said contract, there were to be paid in 30 days from the date thereof, $760 to the defendant Barnes, and $1,270 to the defendant Helbling; said amounts to be so paid in 30 days aggregating $2,030.   The balance that would have remained after

making said payments, if they had been made, was $3,510. For this amount, a note and a mortgage were to have been made to the defendants, payable in six months, with interest thereon at the rate of 10 per cent per annum. Griffin agreed to furnish Milne or his assigns an abstract of title to said premises. By said contract, Griffin, for the defendants, agreed to sell said real premises to Milne or his assigns, at any time within 30 days from the date of said agreement.

The tract owned by the defendant Barnes was a homestead. He had completed his residence and cultivation thereof, and had made his final proof and had received the receiver's final certificate for said homestead; but at the date of said contract he had not received his patent for said land, but was expecting to receive it soon.

An abstract for the Barnes tract failed to show that a patent for his land had been issued by the United States. Soon after the execution of said contract, J. S. Milne, for a valuable consideration, assigned the same to the plaintiff, James A. McCarty, and he is the owner and holder thereof, as trustee. The 30 days for the completion of the purchase of said property under the terms of said contract expired on December 8, 1909; but negotiations between the parties for said sale continued for months thereafter.

The complaint alleges, *inter alia,* the following:

"That defendants were not able, until some time after the expiration of 30 days from said November 8, 1909, and, to wit, on or about March 11, 1910, to furnish a good merchantable title to said land, for the reason that said defendant Oscar Barnes did not have a United States patent to a portion of said land. That on or about December 24, 1909, defendants and the plaintiff, taking into consideration, and on account of, the fact that defendant Oscar Barnes did not

yet have said patent, mutually agreed that the performance of all acts and things which under said contract dated November 8, 1909, were to be performed within 30 days from said November 8, 1909, should be deferred and postponed until defendants should receive and have recorded in the county records of the proper county the said patent to said land, and until defendants should have notified the plaintiff of the recording of said patent; and at the same time it was further mutually agreed that in consideration of the postponement of the performance of said contract, as aforesaid, the plaintiff should pay to the defendants, and the plaintiff did then pay to the defendants, and the defendants accepted from the plaintiff, the sum of $70.78, as interest, at the rate of 10 per cent per annum on the sum of $5,540, being the unpaid portion of said purchase price, from November 8, 1909, to said December 24, 1909; and that, in consideration of the payment of said interest money, the defendants agreed to waive, and did waive, whatever rights they had to insist on said contract being performed by said plaintiff within said 30 days, in accordance with its said provisions. That on the said date it was further mutually agreed by and between the defendants and plaintiff that upon receipt of said notice the plaintiff should deposit in escrow with Hartman & Thompson, bankers, at Portland, Oregon, for the use and benefit of defendants, the sum of $2,030 to cover said payments of $760 and $1,270 respectively, as aforesaid, together with a promissory note, dated on the same date, signed by the plaintiff, in favor of the defendants, in the sum of $3,510, due in six months from the date thereof, with interest at the rate of 10 per cent per annum, payable semi-annually, together with a properly executed mortgage on said premises as security for said note, said mortgage to be signed by the plaintiff, and was to be in favor of the defendants, and dated the same date as said note; and that simultaneously with the deposit of said sums of money and the said promissory note and mortgage as aforesaid, it was agreed that defendants should deposit with said

Hartman & Thompson properly executed deeds of general warranty, conveying all of said land to plaintiff, free and clear of all liens and encumbrances, together with a complete abstract of title to said land certified to as of that date, showing a good merchantable title to said land in the defendants. That defendants recorded said patent in the county records of Douglas County, Oregon, on or about March 11, 1910, but did not notify plaintiff thereof until on or about May 11, 1910, and that immediately after receiving said notice plaintiff deposited with said Hartman & Thompson, for the use and benefit of defendants, in accordance with the terms of said contract, the sums of $760 and $1,270, together with a properly executed promissory note for $3,510 in favor of the defendants, together with a mortgage on said land for the sum of $3,510 to secure said note, in accordance with the terms of said contract, and plaintiff immediately thereafter notified defendants that said sums of $760 and $1,270 and said note and mortgage had been deposited as aforesaid. That defendants have failed, neglected and refused to deposit with said Hartman & Thompson properly executed deeds and an abstract of title to the said premises in accordance with said contract, and defendants still refuse to deposit same, and to carry out their part of said contract. That plaintiff left said sums of $760 and $1,270 and said promissory note and mortgage on deposit as aforesaid, with said Hartman & Thompson, for a reasonable length of time, to wit, until June 16, 1910, and that defendants knew that said sums of money, note and mortgage were thus on deposit, and that on and ever since said May 11, 1910, plaintiff was, and now is, ready, able and willing to complete the purchase of said premises in accordance with the terms of said contract, and has been able, ready and willing to pay said sum of $2,030 and to deliver said note and mortgage, and that at divers and sundry times since said May 11, 1910, plaintiff has notified defendants of his readiness and willingness to carry out his part of said contract as aforesaid, and that at all such times defendants have refused, and

now refuse, to perform their part of said contract. That plaintiff has done and performed all acts and things to be done and performed by him under said contract, and is now able, ready, anxious and willing to perform his part of said contract in every respect whatsoever necessary for the completion of the performance of the same, and is ready, able and willing at any time that your honorable court may direct, to deposit with the clerk of this court, for the use and benefit of defendants, said sum of $2,030 and said note and mortgage, in performance of his part of said contract.''

The answer of the defendants denied nearly every allegation of the complaint and set up some affirmative matter. The plaintiff was permitted to amend his complaint by inserting, after the word ''provisions'' in line 14 of page 4 thereof, the following, which was deemed denied:

''And also agreed to waive, and did waive, any right they had under said agreement to declare said agreement null and void, and to declare a forfeiture of any payments theretofore made under said agreement, and plaintiff paid said sum of $70.78 in reliance on the agreement of defendants to waive said rights.''

1. The patent for the 80 acres of land belonging to the defendant Barnes was issued on November 18, 1909; but the parties did not know of its issuance until in March, 1910. It was recorded on March 11, 1910; but the plaintiff did not know of the issuance or the recording of the patent until later.

The evidence shows that the plaintiff was not willing to close the deal until the patent was issued and recorded. By the agreement set out *supra,* the defendants, by their agent, agreed to sell the real estate therein described and to furnish an abstract of title thereto. We hold that said agreement bound the de-

fendants to convey a good marketable title to said premises to Milne or his assigns: See 39 Cyc. 1309; 31 Cyc. 632. The fact that the defendants agreed to furnish an abstract of title shows that the vendee was to have a marketable title, and that such a title was to be shown by the abstract.

1 Cyc. 213, says:

"An abstract of title is a memorandum or concise statement of the conveyances and encumbrances which appear on the public records affecting title to real property."

Obviously, if the United States had not issued a patent for a part of the land, an abstract would not show a marketable title thereto in a homesteader.

2. The evidence shows that Senator Bingham, as agent for the plaintiff, paid the defendants, on December 24, 1909 (16 days after the expiration of the 30 days mentioned in the contract), the sum of $70.78. The defendants claim that this was a payment of interest on the purchase price of the land up to December 24th, and the defendants claim, also, that the plaintiff and the defendants agreed, when this money was paid on December 24th, that on the following Monday (three days after that date) the whole matter should be closed up in accordance with the written agreement. On December 24th, the defendants made deeds to the plaintiff, purporting to convey to him said real property, and placed said deeds in escrow in the bank of Hartman & Thompson in Portland, to be delivered to the plaintiff when he should pay the sum of $2,030 and execute a mortgage or mortgages and a note or notes for the remainder of the purchase price. These deeds were acknowledged before M. G. Griffin, a notary public. He annexed to said deeds proper certificates of acknowledgment, but did not affix his

seal thereto. All these things were done 16 days after the expiration of the 30 days stated in the written contract, and these facts show that the defendants did not insist or claim at that time that the time for completing said deal had expired and that they would not go on with it. By executing said deeds and putting them in escrow, after the time stated in the written agreement had expired, they waived said provision as to time and recognized that said contract was still alive and to be carried out. The plaintiff says that this delay was caused by the fact that the Barnes patent had not been received or recorded, and that he was ready and willing at all times to comply with his part of said contract as soon as said patent should be received and recorded and he should have notice thereof. The abstract that was obtained showed that there was no patent of record for said land.

Mr. Allshaw, cashier of Hartman & Thompson's bank, with whom the deeds were placed in escrow, referring to what occurred on the afternoon of December 24, 1909, when the deeds were placed in escrow, says in part (Ev., p. 92):

"There was a party came there to the bank, and I was busy, and they said they wanted to put something in escrow. * * I knew Mr. Griffin very well. I had seen Mr. Helbling and Mr. Barnes before, * * and this gentleman who appears to be Mr. Bingham, and they had two deeds which they wanted to leave there in the bank in escrow with the understanding that— I understand that there was some patent that had not been perfected in regard to the man selling this property to Mr.—I think his name was McCarty. This name appeared on the deeds. Anyway, when this patent was perfected, then I was to handle the transaction."

The parties do not agree upon this point, but we think that the weight of the evidence and the acts of the parties show that the defendants put their deeds in said bank in escrow with the agreement that the transaction should be closed up when the Barnes patent should be received and recorded, and the plaintiff has notice thereof, and that the completion of the matter should be postponed until that time. This theory is borne out by the fact that Mr. Barnes kept the final receipt in his possession until in March, 1910. In the latter part of February, 1910, Barnes wrote to the land office at Roseburg, asking whether the patent had been received, and, learning that it had, he sent the receipt to the land office, and that office sent him the patent and he had it recorded. After it had been recorded, Mr. Barnes says that he took the patent to Mr. Daly, one of the persons for whom the plaintiff is trustee, and showed it to him. As late as May 28, 1910, the defendant, Louis Helbling, made to the plaintiff a deed for his part of the real premises in dispute and placed it in escrow in the bank of Hartman & Thompson in lieu of the one that he placed there on December 24, 1909.

These acts on the part of the defendants show that, as late as May 28, 1910, they were negotiating for the closing up of this deal and treating it as still alive. There is no evidence, until after May, 1910, tending to show that the defendants considered said contract forfeited or invalid for any reason. They left their deeds in escrow at the bank.

We hold that the defendants, by their acts, waived all right to insist that said contract had expired by limitation, if they ever had such right. In his work on Specific Performance of Contracts, Section 394, Professor Pomeroy says:

"Whenever time is made essential either by the nature of the subject matter and object of the agreement, or by express stipulation, or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists—that is, the one who is entitled to insist upon a punctual performance by the other, or else that the agreement be ended—may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct; and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, and not ended by the other party's default."

Waterman, in Section 482 of his treatise on Specific Performance of Contracts, says in part:

"An objection based on delay will be waived by conduct inconsistent with the intention to insist on it, whether time were originally of the essence of the contract, or afterward engrafted on it; as by continuing to negotiate and treating the contract as still in existence after the time for fulfillment has expired. So, it has been held that the examination of the title by the purchaser after the day for completion will prevent his insisting on time as essential, even though a formal notice to abandon the contract may have been given."

36 Cyc., page 717, says:

"The default as to time may be waived by the conduct of the other party; as, by acts recognizing the contract as subsisting, by receiving payment, or by continuing negotiations."

The defendants continued negotiations for months after the expiration of the time stated in the contract, and thereby waived the provision as to time of performance stated in the original contract.

3. The defendants contend that they deposited their deeds with the bank on December 24, 1909, and that on the then following Monday the plaintiff was to pay in cash to them at the bank $2,030 and give them a mortgage or mortgages upon the land in dispute for the balance of the purchase price, to be due in six months from that date and to bear interest at the rate of 10 per cent per annum. They contend, also, that they called at the bank on the Monday referred to, and were told that the money would not be paid then, because Barnes' title to his part of the land was not satisfactory, for the reason that his patent, as was then supposed, had not been issued. The plaintiff denies that any money was to be paid on the Monday after December 24, 1909, and contends that no more money was to be paid until the patent for the Barnes' land should be issued and recorded and he should have notice thereof, and Barnes testifies that Daly, one of the real parties in interest, told him that the money was not paid, because the patent was not on record, etc. He says that he kept the final receipt until he sent it to the land office in March, 1910, to obtain the patent, and that he never showed it to the plaintiff or to Daly. The patent was issued on November 18, 1909, but this fact was not known to any of the parties until March, 1910. It was recorded about March 11, 1910. Mr. Barnes says that he showed the patent to Daly in March, 1910, after he received it from Roseburg; but Daly says it was in May, 1910.

After the defendant Barnes received his patent and showed it to Mr. Daly, he says that he insisted that the defendants were entitled to receive interest on the unpaid portion of the purchase price of the land from December 24, 1909, to the time that the transaction

should be closed at the rate of 10 per cent per annum, and that Daly was not willing to pay it.

The defendant Barnes testifies, also, that the difference between the defendants and Daly that prevented the closing of this deal, after the patent was received and recorded, was his demand for 10 per cent interest on the balance of the purchase price from December 24, 1909, until the deal should be closed. (See Ev., p. 179.)

Barnes' evidence shows that it was the refusal of Daly to pay said 10 per cent interest that prevented the closing of the transaction, and that the matter of time did not prevent its consummation.

The defendant Helbling says, also, that Daly did not pay the defendants on the Monday after December 24, 1909, because he claimed that Barnes' title was not good. He says, also, that Daly did not want to pay 10 per cent interest from December 24, 1909, until the deal should be closed, and that Daly objected to paying any interest prior to the date of the recording of the Barnes' patent. (See Ev., p. 223.)

Senator I. H. Bingham, who was acting for Mr. Daly, testifies that he refused to accept the Barnes' land until the patent was issued and recorded (Ev., p. 30), and he says, also, that it was the understanding of the parties on December 24, 1909, when he paid the defendants some money as interest and they deposited their deeds in escrow in the bank, that the transaction should be closed when the patent for the Barnes' tract should be received and recorded and Daly's attorneys had passed on the abstract (Ev., pp. 31, 32).

Mr. Daly testifies that it was agreed by the parties on December 24, 1909, that the abstracts were to be examined by Mr. Dabney, and that when the title to

the property was approved the transaction should be closed (Ev., p. 62).

While the evidence is conflicting on this point, we find that it was agreed by the parties that the transaction should not be closed until the Barnes' patent should be recorded and the plaintiff have notice thereof. The acts of all the parties harmonize with this view of the evidence.

4. A "patent" is the instrument by which the United States conveys to persons entitled thereto the legal fee-simple title to public lands. 32 Cyc. 1029, 1030, says, in part:

"A patent is the government conveyance; the instrument which, under the land laws, passes the title of the United States. * * As a general rule, the issuance of a patent is necessary to divest the United States of the legal title to any of the public lands and vest such title in an individual. * * The execution and delivery of a patent to a person entitled thereto are mere ministerial acts of the officers charged with that duty, and, when the right to a patent becomes perfect, the full equitable title passes to the purchaser or grantee with all the benefits, immunities and burdens of ownership, and the government holds the naked legal title in trust for him. A patent certificate or final certificate of purchase protects the purchaser's right as fully and is as binding on the government as a patent; but it does not convey the legal title in fee simple, although after the lapse of more than 20 years it may be presumed that a patent was issued to the certificate holder."

5. Discussing the effect of a receiver's final certificate, the Supreme Court of the United States, in *United States* v. *Detroit Lumber Co.*, 200 U. S. 337, 338 (50 L. Ed. 499, 26 Sup. Ct. Rep. 282, 287), says in part:

"The receipt is an acknowledgment by the government that it has received full pay for the land, that it

holds the legal title in trust for the entryman, and will in due course issue to him a patent. He is the equitable owner of the land. It becomes subject to state taxation, and under the control of state laws in respect to conveyances, inheritances, etc. * * For it must be remembered that the latter (the patent) is the instrument which passes the legal title, and until it is issued the legal title remains with the government, and is subject to investigation and determination by the Land Department."

See, also, on this point, *Caldwell* v. *Bush,* 6 Wyo. 342 (45 Pac. 488).

A homestead entryman who has resided upon and cultivated his claim the required time, and has made his final proof, and received the receiver's final certificate, has the equitable title to the land embraced in his entry, and is entitled to a patent therefor in due course; but the issuance of the patent is necessary to convey to him the legal fee-simple title. He may sell and convey his equitable title.

However, under the facts of this case, we hold that the plaintiff had a right to refuse to complete the purchase until the patent for the Barnes' land was issued, and placed on record and he had notice or knowledge thereof. The defendants, by the contract, were required to furnish an abstract of title, and such abstract should have shown a good title in the vendors. An abstract of title to a United States homestead claim, where no patent had been issued or recorded, would not show the legal title to be in the homestead entryman; and in this case the abstract failed to show a legal title in the defendant Barnes.

36 Cyc., page 632, says in part:

"To force upon a vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this a court of equity, in the

exercise of its discretion, will refuse to do, irrespective of the question whether the title is actually good or bad.''

6. The patent was recorded in March, 1910, and the plaintiff had notice thereof thereafter. The defendants were then in a position to close the transaction and make a good title; but they refused to do so, unless the plaintiff would pay them interest on the unpaid portion of the purchase price of the property from December 24, 1909, to the date of the closing of the transaction at the rate of 10 per cent per annum. The plaintiff refused to pay this interest. There was no agreement to pay interest during said period of delay, and none can be implied. The plaintiff had a good right to refuse to pay said interest.

We hold that the plaintiff had a good right to refuse to close the deal until the Barnes' patent was recorded, and he had notice thereof, and, also, that the plaintiff was not at fault for the time lost by the delay in recording the patent and notifying the plaintiff thereof. That was the fault of the defendants. It was their duty to show, by the abstract, that the patent had been issued and recorded. The claim for said interest was without foundation in law or equity.

As admitted by the evidence of the defendants, the failure to close the deal in May, 1910, was due to their demand of interest on the unpaid purchase money from December 24, 1909, until that date. The evidence shows that the deal would have been consummated in May, 1910, if they had not made that demand. As stated *supra*, we hold that said demand was improper. The defendants were entitled to the sum of $2,030 in cash and a note and mortgage on the premises for the balance of the purchase price This note and mortgage would have borne interest from their date

at the rate of 10 per cent per annum and have become due in six months from their date.

The evidence shows that the plaintiff or his assignor paid to the defendants on the purchase price of the land in question at and prior to November 8, 1909, in the aggregate, the sum of $2,000. This money was paid to the agent of the defendants, with their authority and approval, and they have retained this money. The total purchase price was $7,540, and the amount unpaid is $5,540.

7. The defendants contend that no proper tender of the $2,030 was made by the plaintiff. The evidence shows that the plaintiff arranged with the bank of Hartman & Thompson, where it was understood that the money should be paid, to pay to the defendants the $2,030, when the Barnes patent should be recorded and proper deeds should be made by the defendants for the land. The defendants deposited with said bank, on December 24, 1909, deeds for said land to be delivered to the plaintiff when the deal should be closed; but these deeds were defective in that the notary public before whom they were acknowledged failed to affix his official seal thereto. Said bank was ready at all times after the recording of said patent to pay said money for the plaintiff, when said deeds should be corrected and ready for delivery.

We find from the evidence that, at all times after the plaintiff had notice of the recording of the Barnes patent, he was able, ready and desirous of closing said deal for said land, and that the closing of said deal was prevented by the defendants' demanding of him the payment of interest on the unpaid portion of the purchase price of said land at the rate of 10 per cent per annum from the 24th day of December, 1909, until the said deal should be closed, and we find from the

evidence, also, that the defendants refused to close said deal, unless said interest should be paid, and that the plaintiff refused to pay it; but that he was ready and desirous of paying the defendants said sum of $2,030 and executing to them his note and mortgage upon said premises for the remaining sum of $3,510, to be due in six months, and bearing interest at the rate of 10 per cent per annum, in accordance with the said written contract of November 8, 1909.

We find that no actual tender of said money, note and mortgage was necessary, for the reason that it is clearly shown by the evidence and the answer of the defendants that said money, note and mortgage would not have been accepted by the defendants, if they had been tendered.

38 Cyc., page 702, says:

"Tender need not be made when the vendor has announced that he will not comply with his contract, so that a tender would be a useless ceremony."

In *Guillaume* v. *K. S. D. Land Co.*, 48 Or. 405 (86 Pac. 884) (a suit for specific performance), the court says:

"The rules of law do not require the performance of vain things, and as the defendant would not have accepted the remainder of the purchase price of the block as a consideration for the execution of the deed, the plaintiff was not obliged to make a tender thereof as a condition precedent to his right to a decree for specific performances."

See, also, Pomeroy, Specific Performance, § 326; Waterman, Specific Performance, § 446.

The plaintiff, by his complaint, alleges that he is able, ready, willing and desirous to perform his part of said contract, and offers to deposit with the clerk of the court below said sum of $2,030 and to make the

note and mortgage in accordance with the terms of said contract, when directed to do so by the court. This is sufficient under the facts of this case: See Waterman, Specific Performance, § 447.

8. The defendants contend, also, that a parol agreement to extend the time for performance of a contract to convey land is void under the statute of frauds; but in this case the defendants were not in a position to comply with the contract on their part within the time stated in the contract and the time for performance was extended, as stated *supra,* by mutual agreement of the parties, until the Barnes patent should be issued and recorded and notice thereof should be given to the plaintiff. The defendants waived the delay in the performance of the contract and cannot now be heard to raise that objection: *Kingsley* v. *Kressly,* 60 Or. 167 (111 Pac. 385, 118 Pac. 678, Ann. Cas. 1913E, 746). In fact, the delay was caused by a defect in the record title of the defendants.

The evidence does not show precisely when the defendants notified the plaintiff that the Barnes patent had been received and recorded; but it is certain that it was not prior to March 11, 1910. There was some controversy as to whether there should have been one note and one mortgage or two notes and two mortgages; but we deem this question immaterial, as these instruments, if they had been executed, would have become due and payable before this suit was begun, and it is not necessary now to require any note or mortgage to be executed. The $5,540 unpaid can be treated as past due and payable, and its payment can be required without the execution of any note or mortgage therefor.

We have carefully considered the evidence and the law pertaining to the facts, and we find that the plain-

tiff is entitled to the relief prayed for in the complaint. The defendants have received $2,000 of the purchase price of the land in dispute, and there will be due them from the plaintiff a balance of $5,540, with interest, when this transaction is closed, as provided *infra.*

We find that this real estate contract should have been performed on May 1, 1910. The parties do not agree as to the date that the plaintiff had notice of the issuance and recording of the Barnes patent; but the date just stated is approximately correct. The defects in the defendants' deeds were still uncorrected on that date.

We find that the plaintiff is entitled to a decree against the defendants requiring each of them to make, execute, and deliver to the clerk of the court below, for the plaintiff, a good and sufficient deed of conveyance, in due form, properly executed, witnessed, acknowledged and certified, conveying to the plaintiff in fee, free from liens, the real property in dispute, belonging to each of the defendants, respectively, and described in the complaint, within thirty days from the date of the entry of the mandate in this case in the court below, and that the plaintiff deposit with the clerk of the court below, for the defendants, the following sums of money, to wit: For the defendant Louis Helbling, the principal sum of $1,270, with interest thereon at the rate of 6 per cent per annum, from the 1st day of May, 1910, until said deposit; for the defendant Oscar Barnes, the sum of $760, with interest thereon at the rate of 6 per cent per annum from May 1, 1910, until said deposit is made; for said defendants Helbling and Barnes, the principal sum of $3,510, with interest on said sum at the rate of 10 per cent per annum from May 1, 1910, until said deposit is made. The plaintiff shall not be entitled to the

possession of said deeds until and unless said deposits of money for the defendants are made as stated *supra.*

The decree to which the plaintiff is entitled, as stated *supra,* shall provide, also, that in case the plaintiff shall deposit said sums of money in said court for the defendants as above stated, and the defendants shall fail or neglect to execute and deliver said deeds to the clerk of the court below for the plaintiff, as above required, within the time stated said decree, so to be entered in the court below, shall be deemed and taken to be equivalent to and operate as such deeds of conveyance would have operated if actually executed by the defendants to plaintiff, as above required.

We do not deem it necessary to pass upon any other question. We find that the court below erred in not granting the plaintiff the relief prayed for in the complaint.

The decree of the court below is reversed, and this cause is remanded to the court below, with directions to enter a decree in accordance with the terms of this opinion.          REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.