Argued April 18, affirmed May 29, 1928.

# M. D. MALCOLM ET AL. *v.* W. B. TATE ET AL.

(267 Pac. 527.)

**Exchange of Property — Plaintiffs, Inspecting Defendants' Property Before Contracting for Exchange, and Assigning Delay in Closing Transaction as Sole Reason for Rescission in Written Notice Thereof, Held not Entitled to Rescind for Fraudulent Representations of Value.**

1. Plaintiffs, inspecting defendants' property before contracting to exchange property therefor, and assigning failure to close transaction within time limit as sole reason for rescission in written notice of such intent, *held* not entitled to rescission on ground of fraudulent representations that defendants' property was worth $4,100 and leased for $40 per month, whereas it was worth no more than $2,500 and rental included furniture and equipment; representations as to value amounting only to expressions of opinion.

**Contracts — Contract will not be Rescinded for Mere Error of Judgment.**

2. It is not the policy of the law to grant relief from a contract by rescission for mere error of judgment.

**Exchange of Property — Plaintiffs Held not Entitled to Rescission of Exchange Contract for Delay in Closing Deal, in View of Time Allowed for Specific Acts, Continued Negotiations, and Delay in Obtaining Releases of Plaintiffs' Mortgages.**

3. Plaintiffs *held* not entitled to rescission of contract for exchange of property because transaction was not closed within twenty days specified, where parties were to have ten days to examine abstract and thirty days more to correct defects in title, they continued negotiations after twenty days, and much of delay was caused by difficulty in obtaining releases of plaintiffs' mortgages, one of which was not disclosed by them when they executed warranty deed.

**Exchange of Property — Parties cannot Rescind Exchange Contract for Delay in Closing Transaction After Continuing Negotiations.**

4. Parties cannot recognize subsistence of their contract for exchange of property by continuing to negotiate after expiration of specified time for closing transaction, and then undertake to rescind it because of such delay.

---

1. Expression of opinion as fraud, see note in 35 L. R. A. 417. See, also, 27 R. C. L. 363.

4. Waiver of purchaser's right to rescind, see note in 30 L. R. A. (N. S.) 872. See, also, 27 R. C. L. 656.

Escrows — Depositor's Instructions must be Strictly Followed in Delivering Deed Placed in Escrow.

5. Where a deed is placed with a depositary in escrow, there must be a strict compliance with the instructions of the depositor in delivery of instrument.

Escrows — Grantee in Deed Deals With Escrow Agent at His Peril and is Bound to Know Limitations of Agent's Authority.

6. Grantee in deed, placed with depositary in escrow to be delivered according to depositor's instructions, deals with escrow agent at his peril, and is bound to know limitations of such agent's authority.

Escrows—Delivery of Deed to Escrow Agent According to Escrow Agreement was as Complete as if Made to Grantee Personally.

7. Delivery of deed by one party to contract for exchange of property to other party's escrow agent strictly according to terms of escrow agreement, authorizing and instructing such agent to deliver principal's deed on delivery of grantee's deed, was as complete as if made to principal personally.

Exchange of Property — Evidence in Suit to Rescind Exchange Contract Held to Show That Plaintiffs were not Relying on Breach of Escrow Instructions by Failure to Deliver Abstract of Title.

8. In suit to rescind contract for exchange of property, evidence *held* to show that plaintiffs were not relying on alleged breach of escrow instructions by failure to deliver abstract of title to defendants' property.

Exchange of Property—Failure to Pay Cash Provided for in Exchange Contract Held not Ground for Rescission, in View of Payments by Escrow Agent to Satisfy Mortgages on Plaintiffs' Property.

9. Failure to pay plaintiffs $525 in cash, as provided in contract for exchange of property, *held* not ground for rescission, where plaintiffs' escrow agent, from $2,862.50 loaned defendant by World War Veterans' State Aid Commission, satisfied mortgage on plaintiffs' property by paying $2,324.38 principal and interest and paid $312.56 to cancel second mortgage not disclosed by plaintiffs, and advanced $37.50 to pay half of penalty exacted by first mortgagee.

---

Escrows, 21 C. J., p. 880, n. 62.
Exchange of Property, 23 C. J., p. 192, n. 50, p. 193, n. 73, p. 240, n. 79.
Specific Performance, 36 Cyc., p. 717, n. 70.

From Multnomah: WALTER H. EVANS, Judge.

---

5. Necessity of strict compliance with condition of escrow, see note in L. R. A. 1916A, 502. See, also, 10 R. C. L. 633.

6. Effect on right of parties of unauthorized delivery by escrow-holder, see notes in 130 Am. St. Rep. 911; Ann. Cas. 1917E, 435, 458. See, also, 10 R. C. L. 636.

Department 2.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Ganoe & Ganoe,* with an oral argument by *Mr. James H. Ganoe.*

For respondents W. B. Tate and Lola Marie Tate there was a brief and oral argument by *Mr. James F. Alexander.*

For respondents W. B. Lane and A. C. Parker there was a brief over the name of *Mr. W. B. Shively,* with an oral argument by *Mr. Arthur C. Bull.*

BELT, J.—This is a suit to rescind a contract for the exchange of real property upon the following grounds: (1) Fraud; (2) failure to close transaction within the time specified in the contract; (3) violation of certain escrow instructions.

On September 18, 1925, plaintiffs and the defendants Tate entered into a written agreement whereby the former agreed to exchange their house and lot in Westmoreland, Portland, Oregon, for a house and lot owned by the Tates in Belle Crest Addition in the same city. The Malcolm property had a stipulated value of $6,000 and was, according to the contract, encumbered by a mortgage of $2,250, which the defendants agreed to assume and pay. The Belle Crest property was valued at $4,100 and had encumbrances aggregating $2,607, to be assumed by the plaintiffs. It was agreed that the defendants Tate should obtain a loan from the World War Veterans' State Aid Commission for $2,775 and, with the proceeds, satisfy the amount due on the mortgage of $2,250 held by the

Equitable Life Assurance Society of the United States, and pay the plaintiffs $525 in cash. They also agreed to execute a second mortgage for $1,732 on the Westmoreland property in favor of the plaintiffs.

The agreement further provided that each party would furnish the other with an abstract of title or title insurance disclosing a good and marketable title free and clear of all encumbrances excepting only those therein specified. Each party was to have ten days after delivery of the abstract in which to examine the same and a further period of thirty days after notice to correct any defects in title.

On October 2, 1925, plaintiffs executed their deed and mortgage in compliance with the terms of the above agreement and deposited them with the defendants Lane & Parker, doing business under the firm name of Parker Realty Company, with written instructions to deliver them to the defendants Tate on the following conditions: (1) Receipt by escrow agent of deed to Belle Crest property from Tates; (2) delivery of abstract of title to Malcolms for examination; (3) approval of title by Malcolms; (4) receipt of second mortgage for $1,732; (5) receipt of $525 in cash.

On October 8, 1925, Tate and his wife executed a deed together with note and mortgage pursuant to the terms of the agreement of exchange and placed them with the Parker Realty Company under escrow instructions. The plaintiffs and the defendants Tate thus conferred upon the Parker Realty Company authority as agent to close this transaction in accordance with certain instructions.

1, 2. We first inquire whether plaintiffs were induced to enter into this contract for exchange of property by reason of fraud. It is alleged that defendants

falsely and fraudulently represented to plaintiffs that
the Belle Crest property had a value of $4,100 and
that it was leased to a responsible tenant at a rental
of $40 per month. Plaintiffs assert that these rep-
resentations were false in that the property has no
greater value than $2,500 and that the rental for the
house included furniture and equipment therein. We
think there is no reasonable basis for this claim of
fraud. The parties were dealing at arm's-length and
the plaintiffs inspected the property before entering
into the contract. The representations, if any made,
as to value amounted, in the light of the evidence,
only to an expression of opinion. It is not the policy
of the law to grant relief for mere error of judgment.
We think the charge of fraud was an afterthought of
plaintiffs. When written notice was given by them,
December 28, 1925, of their intention to rescind the
contract, no mention was made of any fraudulent rep-
resentations, the sole reason assigned being that the
transaction was not closed within the time limit desig-
nated in their agreement. We agree with the learned
trial judge, who had the advantage of seeing and hear-
ing the witnesses, that the evidence preponderates in
favor of the defendants on this issue of the case.

3, 4. Are plaintiffs entitled to rescission because the
transaction was not closed within the time specified
in the contract? We answer in the negative. Time
was not made the essence of the contract. Indeed, it
would have been impossible to have closed the deal
within twenty days from date of contract by taking
time allotted for delivery of abstracts of title and for
the correction of any defects in title. Unquestionably
there was a waiver of the time limitation. After
lapse of the twenty-day period, the parties continued
to negotiate. When plaintiff Malcolm appeared at the

office of the Parker Realty Company on December 15, 1925, to give notice of his intention to call the deal off, he finally stated that it would be all right with him if the deal could be closed soon after. The conduct of plaintiffs is utterly inconsistent with the observance of this time limitation. It will not do for them to recognize the subsistence of the contract and undertake thus to rescind it: *McCarty* v. *Helbling*, 73 Or. 356 (144 Pac. 499, 7 A. L. R. 1167) ; 36 Cyc. 717. Much of the delay was occasioned by difficulty in obtaining release of mortgage which the plaintiffs had executed in favor of the Equitable Life Assurance Society of the United States whose principal office and place of business is in New York. The mortgagee insisted upon a penalty of $75 before it would release its claim on interest which would have accrued had the mortgage been paid at maturity. It was also necessary to obtain a satisfaction of mortgage amounting to $312.56, held by the Ladd Estate Company on the Westmoreland property. This encumbrance was not disclosed by the plaintiffs when they executed their warranty deed reciting that the property was free and clear of encumbrances with the exception of the mortgage of $2,250. Indeed, plaintiffs have no reason to complain because of delay.

5-8. The serious question in the case is whether equity should decree a rescission by reason of the alleged violation of the escrow instructions. It is well established that where a deed is placed with a depositary in escrow there must be a strict compliance with the instructions of the depositor in the delivery of the instrument or no title will pass. The grantee deals with the agent at his peril and is bound to know the limitations of his authority: *Sharp* v. *Kilborn*, 64 Or. 371 (130 Pac. 735) ; note, L. R. A. 1916A, 502, wherein

numerous cases in keeping herewith are listed. Plaintiffs complain because no deed from the Tates was delivered to them. The deed and second mortgage for $1,732 was delivered to plaintiffs' agent, the realty company, strictly in keeping with the terms of the escrow agreement. The delivery was as complete as if it had been made to the plaintiffs personally. The escrow agreement which the plaintiffs executed, among other things, recited: ''Upon the approval by me or my attorney of said title and delivery to you for me of the deed last mentioned, you are authorized and instructed by me to deliver the deed which I am handing you, * * '' After the abstract of title to the Belle Crest property had been brought down to date and certified by the abstractors on December 15, 1925, it was delivered by defendants Tate to the escrow agent. In response to a telephone message plaintiff Malcolm called at the office of the Parker Realty Company and was informed that the abstract of title was ready for examination. Mr. Miller, at one time associated with the defendant realty company, testified in substance that Malcolm did not care to have the title examined as he was satisfied with it in view of the fact that previous loans had been made upon the property. It has never been contended that the title to the Tate property was in fact defective. We are convinced that the plaintiffs are not relying on the alleged breach of escrow instructions pertaining to failure to deliver abstract of title. There was no occasion to do so if Miller's testimony is to be believed and we think it should be.

9. Is there ground for rescission on account of the alleged failure to pay plaintiffs the sum of $525? This question involves a consideration of the final

steps taken by the escrow agent in closing the transaction through the United States National Bank at Portland, Oregon. The defendant Tate obtained a loan of $3,000 from the World War Veterans' State Aid Commission and gave as security a first mortgage on the Westmoreland property. The Commission, after deducting $138.50 which had been advanced to him for educational purposes, forwarded to the bank the balance of $2,862.50. The Equitable Life Assurance Company's mortgage was satisfied through its agents, Strong and MacNaughton, by paying principal and interest amounting to $2,324.38. It will be noted that interest amounting to $74.38 had accrued on this loan since the original contract was executed. It was also necessary to pay the Ladd Estate Company $312.56 to satisfy its second mortgage on the Westmoreland property, which encumbrance the plaintiffs had failed to mention in their warranty deed. The bank, after deducting certain charges for revenue stamps, recording fees and postage, forwarded the balance represented by its check for $202.01 to the Parker Realty Company. It must be conceded that the satisfaction of the Ladd Estate Company's mortgage was not strictly in keeping with the escrow instructions, but it nevertheless inured to the benefit of plaintiffs. Could the plaintiffs reasonably expect their agent to deliver to them the deed to the Belle Crest property and not satisfy the Ladd Estate mortgage, when they had solemnly covenanted that the' only encumbrance against the Westmoreland property was a mortgage of $2,250? It was impossible, from the proceeds of the state loan, to satisfy the encumbrances against plaintiffs' property and in addition thereto pay the sum of $525. The escrow agent paid

for and on behalf of the plaintiffs, $312.56 to cancel the Ladd Estate Company's mortgage, $74.38 covering interest on the mortgage held by the Equitable Assurance Society, and has in its possession a check drawn on the United States National Bank for $202.01, held for the benefit of the plaintiffs. Furthermore, in accordance with the agreement of plaintiffs, the realty company advanced $37.50 for them, to pay a penalty exacted by the loan association, the realty company having agreed to pay a like sum. Thus it will be seen that, when the account is balanced, the plaintiffs have no just cause to complain that they have not been paid the full sum of $525. Indeed, taking into consideration the check of $202.01 from the bank, there has been paid out for and on behalf of plaintiffs the sum of $626.45, to say nothing about a commission of $300 alleged to be due to the realty company as evidenced by their written agreement.

We conclude that plaintiffs' complaint is not well founded in equity. While the escrow agent assumed authority not expressly vested, we believe that the realty company acted within the spirit of the contract and did only those things plaintiff would have been obliged to do. Plaintiffs did not come with hands entirely clean seeking the aid of equity. The complications that arose were the result of their own delinquencies. They cannot be permitted to profit through their own wrong. The World War Veterans' State Aid Commission has become involved as an innocent mortgagee. Viewing the record in its entirety, we think it would be inequitable to allow the rescission of this contract. The transaction has been closed. Let it stand.

The decree of the lower court dismissing the suit and holding plaintiffs to account for rental on the Westmoreland property since January 14, 1926, is affirmed.                                          AFFIRMED.

RAND, C. J., and BEAN and COSHOW, JJ., concur.