[No. 19307.   Department Two.   July 30, 1925.]

GEORGE N. GERRY et al., Respondents, v. SARAH M. GERRY, as Executrix etc., Appellant.[1]

EXECUTORS AND ADMINISTRATORS (149)—ACTIONS—TIME TO SUE AND LIMITATIONS.   The retention, by an executrix, of personal property to which she had some color of title, and her failure to inventory the same as property of the estate, is not "mismanagement" or "misconduct," within Rem. Comp. Stat., § 161, limiting actions therefor against an executor or administrator to one year from the final settlement, or the time such misconduct is discovered, and will not bar an action prior to the final settlement of the estate.

HUSBAND AND WIFE (6)—CONVEYANCES BETWEEN—GIFTS—EVIDENCE—SUFFICIENCY.   The presumption that certificates of deposit in a bank, issued in the wife's name, were gifts from the husband to the wife, does not establish a gift by evidence that is "clear, unequivocal and definite," or "strong and satisfactory," where they were deposited by the wife while the husband was sick and unable to attend to business, and were issued as renewals of prior deposits, the nature of which was not shown.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered October 4, 1924, upon findings in favor of heirs, in an action to compel an executrix to inventory and account for assets of an estate.   Affirmed.

*Fred Kemp,* for appellant.

*Crollard & Steiner,* for respondents.

HOLCOMB, J.—This appeal involves the ownership of, and the right to, three certificates of deposit which appellant, in whose name they stand and to whom they were issued by the banks of deposit, claims as a gift from her deceased husband, John Gerry.   Respondents are the children of the deceased and his first wife, whose name was also Sarah Gerry.   Respondents contend that the certificates of deposit represent money

[1]Reported in 238 Pac. 5.

which belonged to their deceased father, and that he never made gifts of them to appellant, and that she, as executrix of his last will and testament, should be required to account for them and inventory them as a part of the estate. There is little dispute as to the facts involved.

The first wife of decedent, the mother of respondents, died intestate in Chelan county, this state, in 1908. No probate was ever had upon her estate. About six years after her death, on June 24, 1914, John Gerry married Sarah M. Gerry, this appellant. Their marital relationship continued until he died December 3, 1921. At the time of the death of his first wife, John Gerry and she, as a community, were the owners of a fifteen-acre tract of orchard land in Chelan county, and four hundred acres of improved land in Kansas. Although there was no probate of the estate of his first wife, Mr. Gerry continued to exercise entire control and management of the Kansas land and the Chelan county land, and received all the rents and profits therefrom without any division with, or accounting to, the children of his first wife. He insisted that he receive the income from the two properties and do with it as he pleased. About 1916, the children demanded of him that he make a division of their deceased mother's community interest in the two properties which, at that time, they did not persuade him to do. He did, however, on August 3, 1920, enter into a written agreement with respondents that he would see to the probate of their deceased mother's estate, so that the title might be made clear and confirmed to them that they were the owners of an undivided one-half interest in the property in each state. He also agreed to provide for them by will so as to devise and bequeath to them an undivided two-thirds of all the property belonging to him at his death, *both real and personal,* and whereso-

ever situate. This agreement provided, also, that he was to have the income from all the property as long as he lived.

Mr. Gerry was in good health for one of his years, being about seventy-three years of age when he married appellant, she being then of the age of forty-eight years. For the last three years of his life, he was an invalid and, for some time before his death, was seriously ill and confined to his bed or chair in his home much of the time. Appellant apparently devoted herself to the care and nursing of Mr. Gerry during his invalid years.

Appellant had practically no property of her own at the time of her marriage to Gerry, her property consisting of an unimproved acre tract in Chelan county. Shortly after their marriage, Gerry built for her upon her land a home in which they took up their residence. Gerry also received a pension from the United States government. There is no community property involved in the present estate. All the income that came to Gerry from his land holdings and his pension were, so far as appellant is concerned, separate property. On her part, besides the acre tract on which the residence was built, Mrs. Gerry received an inheritance of about thirteen hundred dollars. As long as he was able, Gerry went to the bank personally and attended to his banking business. After he was confined to the house, it was the practice of Mrs. Gerry to call up the banker, who would come to the house and take Mr. Gerry's instructions, together with any deposit he wished to make in the bank. He did banking business with both the Farmers & Merchants Bank and the Cashmere State Bank, of Cashmere, where they resided.

The will of John Gerry provided that appellant should have an undivided one-third interest of his half

in the two tracts of land mentioned, the other two-thirds of his half interest was devised to respondents in equal undivided shares. Another clause bequeathed all other personal property, "including moneys, personal assets, stock, securities if any, notes and bills receivable" one-third thereof to appellant and the other two-thirds to his children, these respondents, share and share alike.

Appellant and one of the sons were nominated as executrix and executor of the will, but the son nominated as executor failed to qualify, and appellant qualified as the sole executrix of the will. She did not list any of the certificates of deposit involved herein as a part of the estate in the inventory which she filed, assuming that they were her own as a valid gift.

Appellant, as executrix, on April 18, 1922, verified the inventory of the property of the estate in the probate proceeding, and on April 19, 1922, caused a copy of it to be served upon Mohler & Bresnan, attorneys, who at that time represented respondents. The property listed in the inventory was appraised by appraisers and the inventory and appraisement filed in court May 31, 1922. Respondents were therefore fully advised of the filing of the inventory and appraisement. On July 25, 1922, respondents filed a petition in the probate proceeding in which they sought to have appellant as executrix account for moneys which they alleged she had willfully and intentionally failed and neglected to list in the inventory of the estate, approximating nine thousand dollars, which they claimed belonged to the estate. They procured an order for the issuance of a citation against appellant as executrix requiring her to show cause why the moneys in question should not be brought into the estate.

Again, on March 23, 1923, in the probate proceeding, three of respondents—two of them not then joining—

commenced a special proceeding causing a citation to issue to appellant as executrix requiring her to appear and answer their special complaint and account for moneys which they alleged belonged to their father and to be a part of his estate. On March 26, 1923, the special proceeding was dismissed on motion of the respondents who began it.

The action out of which this appeal comes was commenced on February 25, 1924. To the complaint of respondents, appellant answered, making certain denials and setting up three affirmative defenses. These were: (1) a plea of the one-year statute of limitations, alleging that respondents had been furnished with a copy of the inventory in April, 1922, and had been represented by attorneys at the time, and were fully advised that the claim of appellant that the moneys not inventoried in the estate were her own; further, that they had filed a petition in the pending probate proceeding raising the same questions and issues as in the civil suit; and that, because such suit was not commenced within one year after the discovery of the alleged misconduct, it was barred by the statute of limitations. (2) The second affirmative defense alleged that respondents had attempted to litigate the same questions in special proceedings begun in March, 1923, and that the judgment of dismissal therein entered was *res judicata*. (3) The third affirmative defense was a plea to the merits of the case, fully setting forth the facts relied upon.

Respondents demurred to the first and second affirmative defenses, and their demurrers were sustained as to both. Thereupon appellant filed her amended answer leaving out the first and second affirmative defenses, and pleading only what had been the third affirmative defense in her original answer. Respondents joined issue by reply.

The trial court made a number of findings of fact, some of which are covered by the preceding statement, and, among others, found that, during the seven years and five months during which the marriage relation subsisted between appellant and her decedent, the income of decedent consisted of all the rentals from the Kansas farm land, all the rentals from the orchard tract in Chelan county, sums received from the government as pension amounting to more than $2,000, sums received from a life insurance company, amounting to more than $1,200, and a sum acquired through inheritance amounting to $744.36; and that, during the same seven years, the income of appellant consisted of a sum acquired by inheritance amounting to about $1,-300.

It was further found that, from time to time, particularly during the last three years of life of Gerry, as the items of income were received, they were deposited by appellant as his agent in the Farmers & Merchants Bank, and in the Cashmere State Bank of Cashmere, portions of it on open account payable to John Gerry, or Sarah M. Gerry or both of them, but most of it on interest bearing certificates of deposit some of them payable to John Gerry, some to Sarah M. Gerry, and some to both of them jointly; and, from time to time, interest and principal would be collected, transfers made from one bank to the other, and new certificates taken out in one or the other of the banks, the later issues being made payable to Sarah M. Gerry. The twelfth finding is as follows:

"The said John Gerry died on Dec. 3, 1921, and at that time there was on deposit in said two banks sums of money evidenced as follows, the same being the balance or remainder of the total of the items of income heretofore mentioned.

"Item 1. Certificate of Deposit No. 2652, payable to Sarah M. Gerry, issued June 28th, 1920, by Farmers & Merchant Bank for $2274.17.

"Item 2. Certificate of Deposit No. 2667, payable to Sárah M. Gerry, issued August 26, 1920, by Farmers & Merchants Bank, for $2142.50.

"Item 3. An open account in the name of Sarah M. Gerry, credit balance due Dec. 3, 1921, $149.88.

"Item 4. Certificate of Deposit No. 1824, payable to Sarah M. Gerry, issued August 27, 1920, by the Cashmere State Bank, for $2876.90.

"Item 5. Certificate of Deposit No. 1790, payable to Sarah M. Gerry, issued June 15, 1920, by Cashmere State Bank, for $145.27.

"Item 6. Certificate of Deposit No. 1791, payable to Sarah M. Gerry. issued June 15, 1920, by the Cashmere State Bank, for $1429.33.

"Item 7. Certificate of Deposit No. 1907, payable to John or Sarah Gerry, issued March 19, 1921, by the Cashmere State Bank, for $744.36."

The thirteenth and fourteenth findings found that, as to items 1, 2, 4 and 7, set forth in finding No. 12, these certificates evidenced funds belonging to the separate estate of John Gerry at the time of his death; and that Sarah M. Gerry had no right, title or interest therein or thereto except such as is given her by the will of John Gerry. And as to items 3, 5, and 6, set out in finding No. 12, the court found that they evidenced funds belonging to the separate estate of Sarah M. Gerry.

The court also found that the will of John Gerry was duly probated, appellant appointed executrix thereof, qualified and ever since has been and now is the qualified and acting executrix of the will, and that the administration of the estate of deceased under the will is still pending. It was also found that appellant, as executrix, has failed and refused, and still fails and

refuses, to include in the inventory of the estate items 1, 2, 4, and 7 mentioned and described in finding No. 12. It is also found that all certificates of deposit on their face show that they bear interest at the rate of four per cent per annum from the date of each respectively.

From these findings, the court concluded that the amount of the principal and interest of the certificates of deposit specified in items 1, 2, 4, and 7, in finding No. 12, should be charged against appellant as executrix of the will as assets of the estate of John Gerry, deceased, and inventoried by her as assets of the estate, and accounted for by her in the administration thereof, with the interest provided by the certificates. Appellant was given ten days after the entry of the judgment to make voluntary compliance with the judgment of the court, failing which judgment was to be entered for the amount so found as belonging to the estate.

The first question raised on appeal is whether the one-year statute of limitations applies to the cause of action of respondents as presented by the first affirmative defense of the original answer of appellant.

The statute applicable is § 161, Rem. Comp. Stat., [P. C. § 8169], subdivision 2: "An action by an heir, legatee, or other party interested against the executor or administrator, for alleged misfeasance, malfeasance or mismanagement of the estate within one year from the time of final settlement or the time such alleged misconduct was discovered."

Appellant contends that there can be no question but that this suit having been commenced February 25, 1925, it is more than one year from the time the alleged misconduct was discovered, because the inventory and appraisement of the estate was filed by appellant May 31, 1922; and further, that on July 25, 1922, respondents filed a petition in which they raised the same questions and issues against appellant as

now raised in this suit. In this action respondents allege that appellant "has willfully and intentionally failed and neglected to list any of the moneys mentioned . . . in the inventory." In short, it is asserted, respondents alleged misfeasance and malfeasance.

Respondents contended in the trial court, and contend here, that the question has been twice decided contrary to the contention of appellant in the case of *Bartels v. Gove,* 4 Wash. 632, 30 Pac. 675, and again in *Gerald v. Gerald,* 129 Wash. 275, 224 Pac. 604. Respondents assert that the trial court rested its findings entirely on the ground that the conduct of the executrix complained of amounted to non-feasance only, and was not included within the terms of misfeasance, malfeasance, or mismanagement.

To combat the position of the trial court, appellant quotes from the case of *Lough v. John Davis & Co.,* 30 Wash. 204, 70 Pac. 491, 94 Am. St. 848, 59 L. R. A. 802, where it was said that "Jurisprudence does not concern itself with such attenuated refinements," and that "misfeasance . . . may involve the omission to do something which ought to be done,—as when an agent engaged in the performance of his undertaking omits to do something which it is his duty to do under the circumstances, . . ."

The case cited and relied upon has to do with the liability of an agent who is put in charge of property by a landlord with full control and management. The argument was used for the purpose of obliterating some of the shadowy distinctions used by some of the courts, at an earlier date, that an agent of the landlord could be held for misfeasance or malfeasance, but never for non-feasance, and then it was difficult on the part of some of the courts to distinguish between non-

feasance and some other kinds of feasance. This court analyzed and discussed the decisions and the meaning of the words and adopted the general principle that, when an agent has caused injury to a third person through his own carelessness, he is personally liable for negligence as well as for malicious acts.

Nor would we be disposed to concern ourselves with attenuated refinements, but we have to do with language of the statute. The statute uses the words "misfeasance" and "malfeasance," "mismanagement" and "misconduct." These words are, in the sense used, practically all synonymous.

Nonfeasance is defined in 3 Words and Phrases (Second Series), 620, as follows:

"Nonfeasance is the omission of an act which a person ought to do. It is a neglect or refusal without sufficient excuse to perform an act which it is an officer's legal duty to the individual to perform;"

Citing *State, to the Use of Cardin, v. McClellan,* 113 Tenn. 616, 85 S. W. 267, 3 Ann. Cas. 992, and other authorities giving practically the same definition. Another definition given is:

". . . the omission of an act which a person ought to do, as distinguished from 'misfeasance,' which is the improper doing of an act which a person might lawfully do;"

citing *Southern R. Co. v. Rowe,* 2 Ga. App. 557, 59 S. E. 462.

Misfeasance is also defined, to distinguish it from nonfeasance in the same work, as the performance of an act which may lawfully be done in an improper manner resulting in injury to another. While nonfeasance is non-performance of an act which should be performed. Misfeasance means a positive wrong. Nonfeasance mere omission of duty. The same defini-

tions and distinctions are given in Bouvier's Law Dictionary, Volumes 2 and 3.

Had the certificates of deposit or the proceeds thereof been brought into the estate and then allowed to become lost or wasted, there would have been misfeasance. If they had been unlawfully converted by the executrix to her own use when in any way known as a part of the estate, that would have been malfeasance; and either one or both of such acts would constitute mismanagement or misconduct. We are therefore forced to the conclusion that the trial court was right and that, under the terms of this statute, there was nothing on the part of appellant that could be considered misfeasance or malfeasance or mismanagement of the estate. She simply retained possession of personal property to which she had some color of right or title.

While the situation in this case is not the same as the situation in either the *Bartels* case or the *Gerald* case, we are of the opinion that the one-year statute of limitations does not apply because there has been no final settlement of the estate.

On the merits, appellant insists that the old strict rule as to gifts no longer applies in this state, and relies strongly upon our decisions in *In re Slocum's Estate*, 83 Wash. 158, 145 Pac. 204; *Riddle v. Henderson*, 124 Wash. 31, 213 Pac. 480; *Boole v. Boole*, 126 Wash. 632, 219 Pac. 4; *McIntyre v. Marshall*, 129 Wash. 544, 225 Pac. 415.

In all of these cases, gifts were sustained. But in the *Slocum* case, for instance, the gifts that were sustained were instruments which had been assigned and indorsed by the husband to his wife and delivered to and received by her some time prior to the death of the husband. In the *Riddle* case, the donor, after some other evidence of intention to give, caused title to

mortgaged premises to vest in the donee through fore-closure proceedings, thus evidencing completed gift. In the *Boole* case, the instruments, which were separate property of the husband, were placed in the common safety box of both of them, enclosed in envelopes indorsed in the husband's handwriting as being the property of his wife, naming her, and he made repeated statements to business and social friends and in writing that he had given the bonds to her. In the *McIntyre* case, which is one involving a gift *causa mortis,* it appeared that the donor, being sick, signed a card giving a trustee access to, and control over, her safety deposit vault, and instructed the trustee in writing in case of her death to cash certain items and send the proceeds to two designated donees, after which the donor died of the existing sickness without having revoked the gift. It was there held that the trustee named by the donor was constituted the agent of the donor to deliver possession of the property, and that the gift and the delivery thereof were complete.

Although, at first blush, we were somewhat inclined to the view of appellant in this case, we are now convinced that the evidence does not sustain it. There is no such evidence in this record as has been stated in all our cases to be necessary to sustain a gift. For instance, in *Jackson v. Lamar,* 67 Wash. 385, 121 Pac. 857, cited by appellant, we adopted the rule which has been followed in all cases since, that,

"While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis,* than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but

he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory. Although it may not be true that the law now presumes against a gift, it certainly does not presume in its favor, but requires proof.''

This language was repeated with variations in *In re Slocum's Estate, supra*; and it was there also held that, possession alone was not sufficient to establish title. It was reenforced in *Sturgis v. McElroy,* 113 Wash. 192, 193 Pac. 719, where it was said that a parol gift,

''. . . must be established by clear, unequivocal and definite testimony, and the acts claimed to be done thereunder must be equally clear and unequivocal.''

That is not the character of the evidence in this case. In fact, the evidence of the intention of John Gerry is indicated by the written contract made with his children, these respondents, and his will, which evidence an intent to keep the income of his properties and his other income, which was separate, for his use, for the sole and only purpose of the support and maintenance of himself and his second wife; but that the children who were entitled to inherit their mother's share which, in law and in fact, belonged to them, should receive the remainder.

Appellant relies upon the rule as stated in 30 C. J., 702, § 298, as follows:

''A gift from husband to wife will be presumed where he transfers property to her either directly or through a third person; where he expends money in making improvements on her property; *where he makes bank deposits in her name* . . . or where he pays the consideration for a transfer to her, as where he provides real property with his own money and causes the conveyance to be made to the wife.''

Citing also, *Martin v. Munroe,* 121 Md. 679, 89 Atl. 319; *Reed v. Reed,* 175 App. Div. 165, 161 N. Y. Supp. 671; *In re Klendke's Estate,* 210 Pa. St. 572.

But although the certificates of deposit involved herein stood in her name at the time of the death of her husband, they were the proceeds or the substitutes of other funds which, at the time of their issue, the deceased husband was unable to attend to. They were issued in June and August, 1920, and in March, 1921, at a time when it was admitted that appellant was attending to the banking and other business of her husband. They show, on their faces, that appellant deposited the funds for which they were issued, and she had them made payable to her own order. Items 1, 2, and 4 bear penciled memoranda on their faces that they were issued as renewals of other certificates of deposit. What these were, we do not know.

The evidence falls far short of being "clear, unequivocal and definite," or "strong and satisfactory," that the funds were deposited by the deceased or under his instructions with the intention that they were to constitute gifts to appellant. Under the facts shown in the case, the mere presumption flowing from making deposits in the name of appellant which were made by her personally, as stated in 30 C. J. 702, cannot be held to overcome the rule that the evidence to establish a gift must be clear, unequivocal and definite, strong and convincing.

It is therefore ordered that the judgment be affirmed.

TOLMAN, C. J., MITCHELL, FULLERTON, and MACKINTOSH, JJ., concur.