[No. 21175. Department One. September 4, 1928.]

EDWIN M. SCOTT *et al., Respondents,* v. FRANK M. STANLEY *et al., Appellants,* WILLIAM STEWARD *et al., Respondents.*[1]

[1]Reported in 270 Pac. 110.

*S. H. Kelleran,* for appellants.
*Hartman & Hartman,* for respondent Scott.
*Guy O. Shumate,* for respondent Steward.
*Charles L. Harris,* for respondent Allison & Co.

MITCHELL, J. — Frank M. Stanley and his wife claimed to own sixteen hundred acres of land in Okanogan county, and William Steward owned the Chalmers Apartments in Seattle. Through the efforts of their respective real estate brokers, a written contract was entered into for an exchange of the properties by the owners. Scott & Conway were brokers for Stanley and wife, and L. C. Allison & Company were brokers for Steward. The contract was signed by the owners of the properties and by both firms of brokers. It specified the amount each firm of brokers should receive for its services. Conveyances of the properties were never accepted; Steward claimed there was a defect in title to a substantial portion of the Stanley property, as shown by the abstract furnished. The Stanleys could not, or did not, perfect title within the time limited in the contract, and the owners abandoned the deal.

Scott & Conway sued to recover their commission, and upon alleging an agreement between them and the other brokers for an equal division of the commissions provided by the contract for both firms, made all the other parties to the contract parties defendant in the action. All of them appeared, and upon issues joined, the case was tried to the court without a jury. Findings of fact, conclusions of law, and a judgment were entered in favor of both firms of brokers, against Stanley and wife only. The action was dismissed as to Steward. Stanley and wife have appealed.

The written contract was prepared with Stanley and wife as first parties, Steward as second party, and Scott & Conway and L. C. Allison & Company as third parties. Each property owner deposited with his broker five hundred dollars, to be held subject to the conditions and stipulations of the contract. By the terms of the contract, Stanley and wife agreed to convey their property by warranty deed, with certain unimportant exceptions. The contract further provided:

"It is agreed that title insurance or abstract of title, continued to date to each of the above properties, shall be furnished by the respective parties, hereto, within ten days from the date hereof and said parties allowed five days for examination thereof, and should there be any defect or defects in the title of either, the party whose title is defective hereby agrees that said defect or defects shall be made good and the title perfected within 30 days from the date of notice thereof, at his own cost and expense, and in the event title cannot be perfected within said time, then the parties whose title is defective shall forfeit the amount deposited by him hereunder, as liquidated damages. . . .

"When said abstract or title insurance policy shall have been furnished as above, and time allowed for the examination thereof shall have elapsed, first and second parties agree to immediately execute and deliver the necessary and proper papers that effect the trans-

fer of the above described properties, and carry out the terms of this agreement, and if either party refuses and neglects to do so within five days after the time elapses for the examination of said abstract or title insurance, then the earnest money deposited by said defaulting party and hereby receipted for shall be forfeited at the election of the non-defaulting party, and accepted as liquidated damages.

"The defaulting party shall further pay to the third parties the full amount of commission hereinafter agreed to be paid by the first and second parties hereto.

"If the nondefaulting party elects to accept the forfeiture of the earnest money deposited by the defaulting party as liquidated damage, the said earnest money together with that deposited by the nondefaulting party shall nevertheless be first used to pay the actual expenses incurred either by the nondefaulting party or the parties of the third part, and the balance of said earnest moneys so deposited shall be divided equally between the nondefaulting parties and the third parties herein.

"The third parties herein have fully performed all of the services as real estate brokers representing first and second parties in the exchange of their said properties, and are entitled to be paid as commission for said services as follows:

"First parties agree to pay to the third parties the sum of $1500, and the second party agrees to pay to the third parties the sum of $2000, said sums being payable upon the execution of the conveyances effecting the exchange or when the time has elapsed according to the provisions of this agreement for the execution of said conveyances."

A part of the property to be conveyed by the appellants was what was known as the Thomas J. Jones homestead, and as stated by appellants, the primary question in the case is whether their title to that property is a good and marketable title of public record. Steward admitted that the title was good with one exception which, as he claims, reasonably justified him in rejecting it. The homestead was acquired in the

name of Thomas J. Jones by patent dated January 23, 1901. At that time and for years, he had a wife, Hannah Jones. Appellants concede that the homestead was the community property of Thomas J. Jones and wife. About 1902, she died, leaving several children and grandchildren of hers and Thomas J. Jones, as her heirs at law, and it is conceded that, upon her death, the title to one-half of the property vested immediately in her heirs, and that no probate was necessary to pass title. Rem. Comp. Stat., §§ 1342, 1366; *Goulette v. Goulette,* 114 Wash. 689, 195 Pac. 1045. Her estate was never probated.

Thomas J. Jones died in 1909, leaving a will by which he gave and devised the homestead to his son John J. Jones. The will was admitted to probate, and this property was inventoried and distributed to John J. Jones, the devisee, by order of court in 1911. In probating the will down to and including the order of distribution, there was no personal notice to the other heirs of Hannah Jones of any of the proceedings nor any appearance by them. This apparent title of record to the property continued in John J. Jones until his conveyance by warranty deed to the grantor of the appellants.

■ Appellants invoke the general rule, in common practice, that, upon the death of either spouse, the whole community estate, and not merely the decedent's interest therein, is subject to administration; and they rely further and principally upon *Magee v. Big Bend Land Co.,* 51 Wash. 406, 99 Pac. 16, a suit by heirs to quiet title, which holds that, in the administration upon the estate of a widower without there having been any previous administration upon the estate of his deceased wife, the court has jurisdiction to administer the whole of the community property.

In the *Magee* case, the spouses died within a period of two years. The holding in that case, under the record, was that, in the administration of his estate, his former wife's estate not having been probated, the court had jurisdiction to administer the community property. The contention of the heirs was that the administrator of the estate of the deceased husband, Frank Rusho,

". . . had no *authority* under the probate proceedings to administer the estate of Magdalene Rusho and that the proceedings thereunder so far as her estate was concerned were void and of no effect."

They did not contend that the administrator had not attempted to administer the whole estate, but that the court had no power to allow such administration. They could not in their suit have reasonably contended that the administrator had not attempted to administer the whole estate, because the record in that case, which we have examined anew, shows that, upon hearing the petition for the distribution of property, the administrator's petition and final report showed the sale of the whole property involved, the remainder of the proceeds of which were ordered distributed, and that all of the heirs actually appeared at the hearing, made no objections whatever and accepted the shares distributed to them.

Here, however, Thomas J. Jones died seven years after the death of his wife, at which time her interest in the property that had vested in her heirs was no longer liable for her debts. Rem. Comp. Stat., § 1368. By his will, Thomas J. Jones could not convey more than one-half of the community property. Rem. Comp. Stat., § 1342. He and his devisee were charged with knowledge of the law. The administration had was the probate of his will. There was no pretense that the

executor of the will attempted to administer the community estate.

Had the heirs of the mother appeared in the probate proceeding, they would, of course, have been bound by the final order. *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386. But they did not so appear. They held title as tenants in common (*Goulette v. Goulette, supra*), and were not divested of their title by the probate proceedings, from aught that appears upon this record.

Nor do the cases of *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990, and *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647, help the appellant. In each of those cases the probate proceedings were upon the estate of the spouse first dying, the estate being administered by the surviving spouse, and in which community property claims were made and determined, and against which attack was made by the subsequent action.

Further, it is claimed that the contract did not obligate the Stanleys to give a good marketable title of record. The contract provided for conveyance by warranty deed, the title insurance or abstract brought down to date was to be furnished within ten days, five days allowed for examination; and if defects were found, they were to be cured within thirty days or forfeit the deposit made as liquidated damages. This, in our opinion, required the showing of a good and marketable title of record. *Summy v. Ramsey,* 53 Wash. 93, 101 Pac. 506; *Crosby v. Wynkoop,* 56 Wash. 475, 106 Pac. 175; *Wilson v. Korte,* 91 Wash. 30, 157 Pac. 47; *McCarty v. Helbling,* 73 Ore. 356, 144 Pac. 499; 27 R. C. L., § 239, p. 512.

The trial court correctly found and held that the title tendered, as shown by the abstract furnished by the appellants, was not a good marketable title.

█ Appellants further contend that the title is good in fact, because their grantors had taken title relying upon adverse possession against the heirs as a matter of fact. But the abstract shows nothing of the kind. It shows no adjudication of adverse possession. There is no proof of admission by the heirs, or any of them, of adverse possession against them. Under this contract, a purchaser is not required to accept conveyance even upon a reasonable showing that he can go out and hunt up evidence sufficient to establish in a law suit that his title is good. *Coonrod v. Studebaker,* 53 Wash. 32, 101 Pac. 489; *Watson v. Boyle,* 55 Wash. 141, 104 Pac. 147; *Crosby v. Wynkoop,* 56 Wash. 475, 106 Pac. 175; Maupin on Marketable Title to Real Estate (3d ed.), p. 794, § 289.

█ As above noticed, the contract between the parties provides:

"And in the event title cannot be perfected within said time, then the parties whose title is defective shall forfeit the amount deposited by him hereunder, as liquidated damages."

Appellants argue that a fair reasonable interpretation of the contract requires it to be held that that is the extent of liability in the event the title be defective and cannot be made good. However, it appears to us to be plain that that provision relates to the rights of the property owners, while the present suit is at the hands of another party, to wit, the real estate brokers to recover commission due for their services. The provision of the contract just referred to does not bear upon the rights of the brokers under the contract, for their services or commissions. The matter of actual expenses is not involved, only brokers' commissions.

That the judgment in this case should have gone against the appellants, only, is according to the provision in the contract to the effect that the defaulting

party shall pay to the real estate brokers the full amount to which both were entitled.

Lastly it is insisted by the appellants that, under the terms of the contract, the appellants incurred no liability unless and until the exchange of properties was actually consummated. It will be noticed, however, that the last paragraph in the contract provides that the sums payable to the two firms of brokers shall be payable upon the execution of the conveyances effecting the exchange, *or* when the time has elapsed according to the provisions of the agreement for the execution of the conveyances. That is, the brokers were to be paid when conveyances were executed if the conveyancing occurred prior to the limit of time fixed in the contract, else they were entitled to their pay upon expiration of that limit of time. Next to the last paragraph in the contract recites that the brokers had fully performed all of their services, and from the two provisions it seems to be clear that the brokers are entitled to recover, since the time for the execution of the conveyances had expired, whether there was any actual exchange of properties or not.

The amount of the judgment in favor of each of the firms of real estate brokers is correct, as shown by a fair preponderance of the evidence.

Findings with reference to the tender of title insurance after the appellants had elected to furnish an abstract which showed title reasonably to be rejected, and also with reference to the insufficiency of the title insurance, were excepted to by the appellants. No argument, however, has been made upon the correctness of those findings and we, of course, treat the exceptions as abandoned.

Affirmed.

FULLERTON, C. J., TOLMAN, PARKER, and FRENCH, JJ., concur.