[No. 27547. Department One. May 11, 1940.]

HAZEL MORAN FRANCE, *Appellant*, v. DEWEY FREEZE
et al., *Respondents*.[1]

*E. D. Phelan*, for appellant.

*Frank Hunter* and *Edward J. Brandmeier*, for respondents.

[1]Reported in 102 P. (2d) 687.

MILLARD, J.—Virgil Shafer France and his wife, Stella Mae France, entered into a contract September 14, 1922, to purchase from Sidney Haverly and wife the real property which is the subject matter of this action. That contract is of record in the office of the county auditor of King county. Sidney Haverly and wife, by warranty deed executed September 16, 1924, conveyed the property described in the contract to Virgil S. France and Stella Mae France, his wife, which deed was placed of record in the office of the county auditor for King county.

Stella Mae France died September 2, 1930. Her estate was never administered. On June 6, 1932, Virgil S. France married plaintiff, Hazel Moran France. May 3, 1935, Virgil S. France died intestate. His widow was appointed and qualified as administratrix of the estate of her deceased husband. The same counsel represented her then as in this action.

By petition prepared by her counsel that there were no minor children of the decedent, that no homestead had been claimed by the widow prior or subsequent to the death of her husband, and that the deceased left an estate (which includes the subject matter of this controversy) of real and personal property in King county of the value of $2,043.10, the administratrix prayed that, out of the assets of the estate, property of the value of two thousand dollars be set aside to her in lieu of homestead. On November 13, 1936, pursuant to that petition, a decree of distribution was entered, which recites that the community of Virgil S. France and Hazel Moran France, his wife, owned real estate (the subject matter of this action) of the value of $1,400, and awarded all of that real estate to the widow.

Subsequently, the widow attempted to convey the property. At that time, a title searcher, who had been employed by Mrs. France's attorney to examine the

title, discovered that the estate of Stella Mae France, deceased, had never been administered, and there was nothing to show "the devolution of the interest of Stella Mae France."

March 19, 1937, Hazel Moran France brought an action to quiet title in herself to the real estate in question. She named the unknown heirs of Stella Mae France, deceased, as defendants. It was conceded that, at the time of her death in 1930, Stella Mae France was the wife of Virgil Shafer France, and that Dewey Freeze and Ruby McAdams, who pursuant to summons appeared and testified, are children of Stella Mae France by former marriages.

The title examiner employed by plaintiff's counsel to examine the title was called by defendants as a witness. Over plaintiff's objection, he testified that he seached the records of the county auditor of King county as to the title to Lot 18, McNaught's Supplemental Plat to Central Seattle, an addition to the city of Seattle, being the land in question, which search disclosed that, on September 14, 1922, there was recorded in the office of the county auditor for King county a contract dated August 29, 1922, from Sidney Haverly and wife, who were record owners of the property at that time, to V. S. France and Stella M. France, his wife. On September 16, 1924, a warranty deed from the Haverlys to Virgil Shafer France and Stella Mae France, his wife, was recorded in Volume 1244, page 354 of Deeds in the office of the county auditor for King county. On June 12, 1935, proceedings were commenced in the superior court for King county in Probate case No. 62055 in the estate of Virgil Shafer France, deceased. Decree was entered in that case November 13, 1936, setting aside the entire estate to the surviving spouse, Hazel M. France.

He further testified that his examination of the rec-

ords in the office of the auditor for King county did not reveal that Stella Mae France was ever divested of her interest in the property.

The trial court found that no administration of Stella Mae France's estate, consisting of one-half of the real estate in controversy, was ever had; that the property is owned by plaintiff and defendants (descendants of Stella Mae France, deceased) as tenants in common; and that the property should be sold and the proceeds divided, one-half to plaintiff and the other one-half equally between the two defendants. Judgment was entered accordingly. Plaintiff appealed.

Counsel for appellant contends that, under the provisions of Rem. Rev. Stat., § 1473 [P. C. § 9893], the judgment of the probate court awarding the property to appellant is conclusive and can not be successfully attacked collaterally.

While the section of the statute invoked by appellant relates to award to surviving spouse of property, not exceeding the value of three thousand dollars, of the estate in lieu of homestead, and then provides that the order or judgment of the court making the award shall be conclusive and final, except on appeal and except for fraud, that section is not applicable to the facts in the case at bar.

Rem. Rev. Stat., § 1366 [P. C. § 9863], provides that, when a person dies seized of lands, the title of such person to those lands shall vest immediately in the heirs of that person; that no administration of the estate of such decedent and no decree of distribution shall be necessary to vest such title in the heirs, but such title shall instantly upon the death of such decedent vest in the heirs of the decedent.

The property acquired by Virgil S. France and his wife, Stella Mae France, while married, became their community property; that is, one-half of it belonged

to each member of the marital community. Upon the death of one spouse, the one-half interest of that spouse descends immediately to the heirs of that spouse. *Scott v. Stanley,* 149 Wash. 29, 270 Pac. 110. The community interest of the deceased spouse vests in the heirs of the deceased as tenants in common with the surviving spouse.

See, also, *Boardman v. Watrous,* 178 Wash. 690, 35 P. (2d) 1106, in which case George H. Boardman died intestate, leaving a widow and three children. Upon his death, she took possession of the entire estate. Seven years later, she died testate, leaving the property to one daughter, to whom the property was awarded by decree of distribution. Approximately two years later, Walter F. Boardman, a son, was appointed administrator of his father's estate. He brought an action to recover his father's one-half of the property alleging it was community property. As to the finality of the decree of distribution in the Mary A. Boardman estate, we said:

"As to the alleged defense of the final settlement of account and decree of distribution in the matter of the estate of Mary A. Boardman, deceased, it is clear, we think, that that decree is not conclusive here because that probate proceeding did not represent or purport to include any property as being the community property of George H. Boardman and his wife—it involved only the probating of Mrs. Boardman's will, and the plaintiff in the present action, in a representative capacity or as an individual, and his brother, Seth Boardman, either or both, were not notified of, nor did they appear at, the hearing for the distribution of the property under the last will and testament of Mary A. Boardman."

Another apt authority is *Parr v. Davison,* 146 Wash. 354, 262 Pac. 959. In 1906, William Parr devised, subject to a life estate in his widow and mother of his

son, real estate to his son George. In 1918, the widow and mother died, leaving a will under which she devised this same real property ultimately to her descendants. A decree of the court distributed the property following the terms of her will. In 1924, George Parr died. His widow brought an action to quiet title against the descendants of her deceased husband's mother's descendant, who defended on the ground that the decree of distribution, which following the terms of the mother's will, was conclusive. We said in our opinion in that case:

"Nor did the decree of distribution in her estate create a title. *Kempf v. Michelbach*, 115 Wash. 193, 196 Pac. 661; *In re Ostlund's Estate*, 57 Wash. 359, 106 Pac. 1116, 135 Am. St. 990. The function of a decree of distribution is to declare the title which accrues under the law of descents, or under the provisions of a will. Here, as to the property involved in this action, upon the death of Rosannah Parr, no title or interest accrued by either of those means. Nor was George W. Parr bound or estopped by the terms and provisions of her will nor of the decree of distribution in her estate. He entered no appearance in, nor did he have any personal notice of those proceedings. The terms of a will or a decree of a court in administering an estate cannot thus deprive a third person of his property."

■ A decree of distribution in a probate matter would not create a title or be binding on the owner who did not have personal notice of and made no appearance in the proceeding. *Parr v. Davison*, 146 Wash. 354, 262 Pac. 959; *Lew You Ying v. Kay*, 174 Wash. 83, 24 P. (2d) 596.

■ Rem. Rev. Stat., § 1473, provides that the order or judgment of the court making the award for which provision is made in that section shall be conclusive and final, except on appeal and except for fraud. It must be borne in mind, however, that this has to do with "the person whose estate is being administered." This

provision for the setting aside of a homestead is that the court

" . . . shall award and set off to the surviving spouse . . . property of the estate, either community or separate . . . and such award . . . shall vest the absolute title . . ."

Appellant overlooks the fact that the estate that was administered was solely that of Virgil S. France. The only interest he had in the real property involved in this action was an undivided one-half interest. The appellant had no community right or interest in the property that did not belong to Virgil S. France subsequent to the death of the first wife, Stella Mae France. The homestead award to appellant could not exceed the limit of the interest of Virgil S. France in the property. To that extent, and as so limited, the judgment of the court making the award was final.

Respondents were not parties in the probate proceeding in which the order was entered awarding the property to appellant. The title to their mother's half interest in the real estate—the mother's estate was never probated—in question vested immediately on the death of the mother in her two children, respondents.

Appellant proceeded on two erroneous theories: (1) In assuming that the probate court in the Virgil S. France estate had jurisdiction of more than one-half of the *rem;* and, (2) in assuming that the probate court had jurisdiction over respondents, who were not parties.

■ It matters not what the general powers and jurisdiction of a court may be. If it act without authority in a particular case, its orders and judgments are mere nullities, protecting no one acting under them and constituting no hindrance to the prosecution of any right. A judgment which is absolutely void is en-

titled to no authority or respect and may be impeached in collateral proceedings by any one with whose rights or interests it conflicts. If the judgment is rendered by a court without jurisdiction, either of the persons or of the subject matter, such judgment may be subjected to collateral attack. The orders and decrees of a probate court would be the same.

Conceding, *arguendo,* that the defense of the respondents constitutes in effect a collateral attack, that would not be a valid objection to maintenance of the suit, inasmuch as the demand for relief sought by respondents is based on want of jurisdiction. The rule forbidding the collateral impeachment of judgments applies to all persons who are parties to the action in which the judgment was rendered and to all those who are in privity with them. A stranger to the record, who is not a party to the action in which the judgment was rendered nor in privity with the party, is not prohibited from impeaching the validity of the judgment in a collateral proceeding if the judgment is absolutely void. Such third persons, which is the status of respondents, may attack the judgment on the want of jurisdiction. The defect of jurisdiction may be either in respect to the person or the subject matter.

Respecting the burden incumbent upon appellant to recover on the strength of her own title, not on the weakness, if any, of the title of respondents, it is enough to say that respondents, while defendants, incontrovertibly established their title to one-half of the property in controversy.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.