[No. 39916. En Banc. February 25, 1971.]

GUNVOR HARBY HESTHAGEN *et al., Appellants*, v. GUNDA HARBY *et al., Appellants*, THEODORE C. BLOMBERG *et al., Respondents.**

*Reported in 481 P.2d 438.

Clifford C. Benson, for appellants Hesthagen et al.

Hoof, Shucklin & Harris and Bryan & Harrod, by Gerald Shucklin, for appellants Harby.

Wallace & Fraser, by Philip M. Best, for respondents Blomberg et al.

FINLEY, J.—This is a collateral attack upon the final distribution of the assets of the estate of one Maja Harby, deceased. Plaintiffs, complaining heirs, are the nieces and nephew of the decedent. Defendants are (1) the distributees under the decree of distribution, and (2) the administrator of the estate and his surety. The distributees appeal from a judgment against them in favor of the plaintiffs. Plaintiffs appeal from a dismissal of their claim as against the administrator and his surety. The pertinent facts are these:

Three elderly sisters, Maja Harby, Gunda Harby, and Bertha Harby Warming, a widow, resided together for a period of years in Bremerton, Washington. Mrs. Warming, who amassed a substantial estate, became quite ill in 1958 and was unable to manage her business affairs. At the behest of Gunda and their brother, Harold Harby, Theodore C. Blomberg, a mechanical contractor, was appointed as guardian of Mrs. Warming's estate. The guardian, with the assistance of his attorney, managed Mrs. Warming's affairs until 1959, when she died, leaving the substance of her estate to Maja and Gunda (her daughter residing in Norway having predeceased her). At the request of Maja and Gunda, Mr. Blomberg was appointed administrator· with the will annexed and continued administration of the estate. While so engaged, the proceeds from the estate of Mrs. Warming's daughter were transmitted to Mr. Blomberg through the Norwegian Consul in Seattle, Washington. Before the estate was distributed, and on November 24, 1961, Maja died

intestate. She was survived by Gunda, by her brother Harold who resided in California, and by the children of a deceased brother, *i.e.*, plaintiffs herein, Gunvor Harby Hesthagen, Ruth Harby Haugen, Tove Harby Bratlie, Egon Harby, all residing in Norway, and Eva Harby Bunk, residing in Germany. Aase Christensen Wangensteen, a sixth child of the deceased brother, residing in Norway, is not a party to this suit. During her lifetime Maja maintained contact with these relatives through correspondence. Likewise, both before and after Maja's death, Gunda and Harold, in varying degrees, corresponded and communicated with them.

At the time of Maja's death, Gunda informed both Harold, the brother, and Egon Harby in Norway of her passing, and following a brief funeral service her remains were cremated and sent to Egon for placement near her mother's resting place. Egon, in turn, notified his five sisters of Maja's passing. In the meantime, at the request of Gunda and with the acquiescence of Harold, Mr. Blomberg agreed to act as administrator of Maja's estate, which consisted of her undistributed share of Mrs. Warming's estate. In this capacity, Mr. Blomberg was aware that Maja's remains had been sent to Norway.

As a prelude to Mr. Blomberg's appointment as administrator, and in preparation of the petition therefor, his attorney perfunctorily inquired of Gunda regarding Maja's heirs. Gunda responded that she and Harold were the only remaining heirs. Without further inquiry, the petition for letters of administration and the list of heirs (RCW 11.28 .111, 83.36.040) were prepared, signed by Gunda, and filed in the Superior Court for Kitsap County, Washington, listing Gunda and Harold as the sole surviving heirs. Pursuant thereto, and without any appearance in court, Mr. Blomberg was appointed administrator, notice of his appointment forwarded to Gunda and Harold in accordance with RCW 11.28.237 and 11.76.040, and a bond posted. Plaintiffs received no notice of the proceeding.

Thereafter, neither Mr. Blomberg nor his attorney made any further inquiry or investigation as to heirship, and

neither Gunda nor Harold volunteered any additional information in this respect. This was despite the fact that the evidence indicates sources of information were readily available which would have revealed the existence of plaintiffs as surviving heirs of Maja. Administration of Mrs. Warming's and Maja's estates was concluded, and upon Mr. Blomberg's final account and petition for distribution, together with his testimony in support thereof, the superior court ordered Maja's share of Mrs. Warming's estate distributed to Gunda and Harold, share and share alike, on August 6, 1962. Again plaintiffs received no notice of the final accounting and distribution of the estate.

In June 1963, Harold visited Norway and spent considerable time with those plaintiffs residing there. The evidence is in dispute as to the nature and extent of any conversations then carried on between plaintiffs and Harold concerning Maja's estate and its disposition. In 1965, at Harold's invitation and expense, plaintiff Gunvor Harby Hesthagen visited with Harold and his wife in California. Upon Gunvor's return to Norway and in October 1965, inquiries were directed to the Norwegian Consul in Seattle, who, in turn, communicated with Mr. Blomberg's attorney and learned of the proceedings in Maja's estate. The consul then relayed this information to plaintiffs sometime in the latter part of November or early part of December 1965. Negotiations were then commenced which culminated in the institution of this suit in early September 1966.

By their complaint plaintiffs alleged that Gunda and Harold, as well as Mr. Blomberg as the administrator, failed to advise the probate court of their existence and failed to give them notice of the proceedings in Maja's estate, thereby depriving them of the opportunity to have their heirship determined. They sought judgment against the defendants, jointly and severally. In essence, the defendants denied any intentional wrongdoing and affirmatively pleaded the statute of limitations. Trial followed before the court sitting without a jury.

The trial court made findings of fact substantially as follows: (a) although plaintiffs were informed of Maja's

death in 1961, they were not notified and did not learn of her estate, the administration thereof, or of their rights as heirs until December 1965; (b) Gunda and Harold knew of the existence of plaintiffs and had communicated frequently with them before and after Maja's death; (c) both Gunda and Harold knew that they were being represented to the probate court as the sole heirs but neither revealed the existence of plaintiffs to the administrator, his attorney, nor to the court; however, in this regard, neither acted fraudulently nor with intent to deceive; (d) Gunda and Harold both waived their statutory rights to act as administrator in favor of Mr. Blomberg; (e) neither Mr. Blomberg nor his attorney was actually aware of the existence of plaintiffs and made no independent attempt, beyond a prefatory inquiry of Gunda, to discover potential heirs; (f) a reasonable investigation and inquiry would have timely revealed plaintiffs' existence and their relationship to Maja; and (g) the property distributed to Gunda and Harold is still in their possession either in the form distributed (cash) or commingled with their other funds.

From the foregoing findings, the trial court's conclusions of law were as follows: (a) plaintiffs had not received notice of the pendency of the probate proceedings or of the hearing upon the final report and petition for distribution as required by RCW 11.28.237 and 11.76.040, and SPR 98.04W (formerly RPPP 98.04W) and should not be deprived of their property without due process of law; (b) the conduct of Gunda and Harold Harby in failing to timely disclose plaintiffs' existence, though innocent, constituted extrinsic fraud warranting a recovery against them; and (c) plaintiffs' right to recover against the administrator and his surety, based upon his negligence in failing to search for the heirs, was barred by the statute of limitations.

Judgment was then entered against defendants Gunda and Harold Harby from which they are now appealing. Plaintiffs' claim against the defendant administrator and his surety was dismissed, and plaintiffs are appealing this action of the trial court.

Plaintiffs' appeal from the order dismissing the administrator and his surety will be considered first.

In contending that the trial court erred in dismissing the administrator and his surety, plaintiffs urge that (a) the administrator's failure to comply with the notice requirements of RCW 11.28.237 and 11.76.040 and SPR 98.04W (formerly RPPP 98.04W) was a denial of due process of law tantamount to a fatal jurisdictional defect in the probate proceeding; (b) the administrator's breach of duty in failing to ascertain plaintiffs' existence and give them the required notice constituted misfeasance or extrinsic fraud; and (c) under the circumstances prevailing, the action against the administrator is not barred by the statute of limitations.

In response, the administrator contends that (a) RCW 11.28.237 and 11.76.040 and SPR 98.04W pertain only to heirs known to the administrator; (b) his failure to discover plaintiffs' existence was, at best, no more than ordinary negligence; and (c) the 3-year statute of limitations, RCW 4.16.080(2), commenced to run from the date of the closing of the estate in 1962; hence, plaintiffs' claim, first asserted in 1966, is barred.

We agree with plaintiffs.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950), the United States Supreme Court had before it the provisions of a New York statute concerning the administration of trust estates, which statute permitted notice of the settlement of accounts to be given to the beneficiaries of the trust by publication. In essence, the court held that such a notice was insufficient under the due process clause of the United States Constitution where the names and addresses of the beneficiaries were known to the trustee or could be ascertained by the exercise of reasonable diligence on the part of the trustee. The court went on to hold that under such circumstances written and mailed notice was required. In so holding, the court stated, at page 314:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality

is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections (citing cases). The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance, . . .

As an outgrowth of this decision SPR 98.04W was promulgated and the pertinent portions of RCW 11.28.237 and 11.76.040 were enacted. In substance, the rule and statutes require that an administrator or executor of the estate of a decedent shall cause written notice of appointment, pendency of the probate proceeding, and final report and petition for distribution to be timely mailed to each heir and distributee whose name and address is known to the administrator or executor. Although the rule and statutes do not explicitly so state, we are satisfied that each and all contemplated that the heirs and distributees entitled to notice included those whose names and addresses were ascertainable by the exercise of due diligence on the part of the administrator or executor. In short, the rule and statutes presupposed that a personal representative, as an officer of the court and a fiduciary for the heirs and distributees, would make an earnest effort in the course of his trust to determine who would be lawfully entitled to the estate. In this connection we observed, while discussing the responsibilities of a personal representative in relation to his trust, in *In re Estate of Maher*, 195 Wash. 126, 131, 79 P.2d 984, 117 A.L.R. 91 (1938), that

it is the duty of an administrator to guard against error in the distribution of an estate, by exercising the greatest possible care to see that the names of the persons entitled under the law to receive the estate, either as heirs at law or legatees, are brought to the attention of the court, and that their names and respective interests are fully and correctly stated in the decree of distribution which is to be presented to the court for signature, . . .

In the instant case, the trial court's finding that a reasonable inquiry or investigation by the administrator or his attorney would have readily revealed plaintiffs' re-

lationship to and interest in the estate is amply supported by the evidence. Plaintiffs, therefore, fall within the contemplation of SPR 98.04W and RCW 11.28.237 and 11.76.040 and were entitled to the notices therein contemplated. Since plaintiffs were not notified in conformity with the mandatory provisions of the statutes and rule, and were not otherwise timely informed of the probate proceedings, they were denied procedural due process. Such a deprivation amounts to a jurisdictional defect as to them, rendering the decree of distribution void. *King County v. Rea*, 21 Wn.2d 593, 152 P.2d 310 (1944); P. Trautman, *Vacation and Correction of Judgments in Washington*, 35 Wash. L. Rev. 505 (1960).

The trial court in essence reached the foregoing conclusions; however, the trial court dismissed the action against the administrator and his surety upon the grounds that his failure to discover and notify plaintiffs of the probate proceedings was ordinary negligence against which the statute of limitations had run. We cannot agree with this determination.

■ The administrator of a decedent's estate is an officer of the court and stands in a fiduciary relationship to those beneficially interested in the estate. In the performance of his fiduciary duties he is obligated to exercise the utmost good faith and to utilize the skill, judgment, and diligence which would be employed by the ordinarily cautious and prudent person in the management of his own trust affairs. *Stewart v. Baldwin*, 86 Wash. 63, 149 P. 662 (1915); *In re Estate of Maher, supra*. For a breach of his responsibilities which causes loss to another, he stands liable.

■ It is, however, the general rule that, if an administrator exercised due care in the selection and employment of an attorney or other agent to assist him in the management of his trust, he is not absolutely bound by the dereliction of such agent or attorney. Nevertheless, an administrator may not remain totally passive and surrender or delegate all of the duties and functions of his trust to his agent or attorney without himself becoming responsible for losses occasioned by their conduct. In such instances liability arises out of his failure to exercise the attention to

and/or superintendence over the activities of his counsel or other agent which a reasonably prudent person, impressed with a trust responsibility, would exercise. *Executor—Liability for Acts of Agent*, Annot., 144 A.L.R. 875 (1943). In applying these rules it is well, also, to bear in mind that it is the administrator whom the statute requires to be bonded—not the attorney—the purpose being to indemnify those beneficially interested against loss. It is to the administrator and his bond, then, that one suffering a loss is statutorily directed to look in the first instance.

■ It is virtually undisputed in the present situation that Mr. Blomberg, as a confidant of the family and as administrator of both Mrs. Warming's and Maja's estates, wholly abdicated his duty and responsibility to ascertain the identity and whereabouts of all of the heirs of Maja's estate, to see that they were properly listed and reported to the court, and to assure that they received appropriate notification of the pendency of the probate proceedings. He initiated no inquiry, conducted no investigation, made no search, asked no questions, although avenues of discovery were easily available and open to him, and despite the fact that he had been dealing with the family affairs since 1958. Instead, he passively left these matters to his attorney, who, in turn, failed to make effective inquiry. While argumentatively and technically Mr. Blomberg's conduct might be characterized as nonfeasance, that is, the nonperformance of an act which ought to be done, we are satisfied that when viewed as the performance of a trust in an improper manner it can properly be characterized as misfeasance or mismanagement, rather than nonfeasance or simple negligence. *Lough v. John Davis & Co.*, 30 Wash. 204, 70 P. 491 (1902); *Gerry v. Gerry*, 135 Wash. 468, 238 P. 5 (1925).

■ The trial court further found that plaintiffs did not discover their right to assert a claim of inheritance in Maja's estate until December, 1965. This suit was initiated within 1 year thereafter. Accordingly, it falls within the ambit of RCW 4.16.110, which provides in pertinent part:

944

Within one year:

. . .

(2) An action by an heir, legatee, creditor or other party interested, against an executor or administrator, for alleged misfeasance, malfeasance or mismanagement of the estate *within one year from the time* of final settlement, or, the time *such alleged misconduct was discovered.*

(Italics ours.)

We conclude that the trial court erred in dismissing the administrator and his surety. Together they stand liable for such loss of inheritance as the administrator's misfeasance or mismanagement has occasioned plaintiffs.

We turn now to the appeal of Gunda and Harold Harby.

In essence, the trial court concluded from its findings that Gunda and Harold were guilty of extrinsic fraud in failing to advise the administrator and the court of plaintiffs' existence. Based upon this conclusion, the trial court imposed a constructive trust upon the proceeds of Maja's estate remaining in Gunda's and Harold's hands, and accordingly entered judgment for the plaintiffs in the amount they would have inherited at the time of distribution of the estate.

On appeal, Gunda and Harold contend that the trial court's finding that neither of them acted fraudulently or with intent to deceive in failing to disclose plaintiffs' existence and relationship negates a conclusion of extrinsic fraud, and that, otherwise, plaintiffs' claim as against them is barred by the 3-year statute of limitations (RCW 4.16 .080(3)).

■ We have stated above that, because of the failure of notice, there was a jurisdictional defect inherent in the decree of distribution. Such a decree is void and does not vest title in anyone. *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 83 P.2d 221, 118 A.L.R. 1484 (1938); *King County v. Rea,* 21 Wn.2d 593, 152 P.2d 310 (1944); *see* Trautman, *Vacation and Correction of Judgments in Washington,* 35 Wash. L. Rev. 505, at 530 (1960); *In re Estate of Manley,* 226 N.Y.S.2d 21 (Sur. Ct. 1962);

*In re Stewart,* 413 Pa. 190, 196 A.2d 330 (1964); *Vogel v. Katz,* 64 Ill. App. 2d 126, 212 N.E.2d 295 (App. Ct. 1965).

Such probate and estate administrations are subject to attack which is without time limitation. In the case of *France v. Freeze,* 4 Wn.2d 120, 102 P.2d 687 (1940), this court said:

> It matters not what the general powers and jurisdiction of a court may be. If it act without authority in a particular case, its orders and judgments are mere nullities, protecting no one acting under them and constituting no hindrance to the prosecution of any right. A judgment which is absolutely void is entitled to no authority or respect and may be impeached in collateral proceedings by any one with whose rights or interests it conflicts. If the judgment is rendered by a court without jurisdiction, either of the persons or of the subject matter, such judgment may be subjected to collateral attack. The orders and decrees of a probate court would be the same.

See also *State ex rel. Patchett v. Superior Court,* 60 Wn.2d 784, 375 P.2d 747 (1962).

■ The instant case, however, is not an attempt to reopen the probate but rather seeks judgment for plaintiffs' share of the estate from Gunda and Harold Harby, from Mr. Blomberg, as administrator, and the bonding company. The trial court found that a constructive trust existed. In behalf of Gunda and Harold it is argued that a constructive trust may not be imposed in the absence of extrinsic fraud, and that furthermore the trial court's finding of extrinsic fraud as to them is totally inconsistent with its finding that each was innocent of fraud and intent to deceive. Implicit within their argument is the legal inference that an innocent party can never hold property under a constructive trust for others. Such a conclusion, however, is not the law concerning constructive trusts. Restatement of Restitution § 201 (1) (1937) states the applicable law succinctly:

> § 201. LIABILITIES OF THIRD PERSONS.
>
> (1) Where a fiduciary in violation of his duty to the beneficiary transfers property or causes property to be transferred to a third person, the third person, if he gave no value or if he had notice of the violation of duty, holds the property upon a constructive trust for the beneficiary.

*See also Paysse v. Paysse*, 86 Wash. 349, 150 P. 622 (1915); *Saar v. Weeks*, 105 Wash. 628, 178 P. 819 (1919); 5 G. Bogert, Trusts § 473, at 40 (2d ed. 1960); 4 J. Pomeroy, Equity Jurisprudence § 1048, at 102 (1941); 5 A. Scott, Trusts § 510 (1967). Whether or not Gunda or Harold Harby are guilty of knowing and purposeful wrongdoing is substantially irrelevant. What is important is that the administrator, as a fiduciary, violated his duty to ascertain and notify the heirs. When this breach of duty caused or resulted in the property in the estate being transferred to the Harbys, they received it and held the other heirs' portion of it under a constructive trust for the other rightful heirs.

Thus, Gunda and Harold Harby are primarily liable for the judgment imposed by the trial court. However, it is possible through the passage of time involved in this case that intervening necessities or living expenses, and the possibility of erosion of estate assets through inflation, may have diminished the amount of money available to satisfy the judgment. The only finding by the trial court with regard to this aspect of this lawsuit is that the property "is still in their possession, either in the form it was distributed or co-mingled [*sic*] with other funds of the recipient thereof." There is nothing in the record before us which requires any change in the result indicated above. However, we are not unmindful that changes in circumstances may make it inequitable to fully enforce the constructive trust. Restatement of Restitution § 142 (1937). Since we must remand, as a result of our determination of the liability of the administrator and his bond, it is possible that upon remand such consideration may prompt a different judgment.

The case is remanded to the superior court for further consideration and action consistent with the views expressed herein.

ROSELLINI, HUNTER, McGOVERN, and STAFFORD, JJ., and WILLIAMS, J. Pro Tem., concur.

HAMILTON, C.J. (concurring in part and dissenting in

part)—I am in full agreement with the majority when, under the facts of this case, it holds that the failure of the administrator to properly ascertain and notify plaintiffs of the probate proceedings subjects the administrator and his surety to liability for the loss of inheritance occasioned plaintiffs.

I do not, however, agree that the facts here presented warrant the imposition of a constructive trust upon the proceeds of the probate proceeding delivered to Gunda and Harold Harby in 1962.

The evidence fully supports the trial court's finding that Gunda and Harold did not act fraudulently or with intent to deceive in innocently failing to disclose plaintiffs' existence as potential heirs of Maja's estate.

The testimony establishes, without dispute, that following Maja's death, they were the two surviving members of an originally substantial number of brothers and sisters, four of whom—Harold, Gunda, Maja, and Bertha Warming—only had come to and lived in the United States for many years.

When Gunda was casually asked who Maja's surviving heirs might be, she replied in effect that she and Harold were the only members of the family left. She was not advised what the term "heirs" included, nor was she queried in any way by anyone as to whether there existed any surviving children of any deceased siblings, although the administrator and his attorney could not help but know that Bertha Warming had at one time a daughter in Norway and that Maja's remains were sent there for interment. Neither was Gunda advised that if any such surviving children did exist they would be entitled to share in Maja's estate. Her reaction and response to the cursory inquiry following Maja's death was a perfectly natural and normal one for a person of her age, family history, and circumstances. And, she had every right to assume that Mr. Blomberg and his attorney, who had acted in a representative capacity in the settlement of Mrs. Warming's affairs, were either familiar with the family situation or would

appropriately familiarize themselves with it to the extent necessary to properly and lawfully settle Maja's estate. Furthermore, she promptly advised plaintiffs of Maja's demise, and with the knowledge and aid of the administrator shipped her remains to the family home in Norway. Under these circumstances her nondisclosure to the administrator or his counsel could hardly be characterized as anything other than innocent.

The same applies to Harold Harby. He resided in California and was first advised of Maja's death by Gunda and the administrator's attorney after the funeral, cremation, and disposition of her remains. At the same time he was advised by mail that he and Gunda would share in her estate. Thereafter, and before distribution, he was not queried in any fashion concerning disposition of the estate. He, like Gunda, had every right to assume that the familiarity of Mr. Blomberg and his counsel with the affairs of Mrs. Warming, Maja, and Gunda would lead to a proper disbursal of the estate under the laws of descent and distribution prevailing in the state of Washington. Against this background, his silence as to plaintiffs' existence does not deserve to be characterized as fraudulent.

Although fraud, misrepresentation, bad faith, concealment or overreaching usually form the basis upon which a constructive trust is erected and a judgment based thereupon is imposed, it is, as noted by the majority, recognized that when a property interest has been acquired by a party under such circumstances as to impose upon that party an equitable duty to convey it to another, and to permit him to retain it would result in an unjust enrichment, then the conscience of equity steps in and provides a remedy. *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919).

Although it cannot be denied that Gunda and Harold Harby will be enriched by retention of the plaintiffs' share of Maja's estate, I do not conceive that it can categorically be said that they would be *unjustly enriched* to the extent that they should, at this late date, become subject to the lien of a personal money judgment against

them and be forced to litigate further the liability of the administrator and his surety.

Maja's estate consisted entirely of liquid assets—cash and some shares of corporate stock—which were distributed equally, value-wise, to Gunda and Harold. This distribution occurred in 1962. They received their respective shares pursuant to a court order which they were entitled to believe was validly entered at the behest of and under the auspices of the administrator and his attorney, upon whose skill and judgment they were fully entitled to rely, and who were adequately compensated for their services. As the trial court found, and as would seem inevitable under the circumstances, the distributed shares, to a large extent, have become indistinguishably commingled with their personal assets and, as the majority point out, it is entirely possible that the passage of time, the cost of living, and the erosion of inflation have tended to substantially diminish the values initially received. Furthermore, the plaintiffs have in essence been granted their relief against the administrator and his surety and nothing of significance to them is to be gained by a joint and several judgment against Gunda and Harold.

All factors considered, I am not of the view that the conscience of equity would be so shocked as to compel the imposition of a constructive trust or a judgment lien upon the estates of these particular parties.

Equitably speaking, then, I would vacate the judgment against Gunda and Harold Harby and dismiss plaintiffs' action as to them. Alternatively, if judgment for the amounts involved must, legalistically, be entered against them, I would grant them judgment over against the administrator and his surety.

NEILL, J., and DONWORTH, J. Pro Tem., concur with HAMILTON, C.J.